2004 WY 117

**Daniel Robert WILLIAMS,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. 03–163.

Supreme Court of Wyoming.

Oct. 20, 2004.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Terry L. Armitage, Senior Assistant Attorney General. Argument by Mr. Armitage.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, Daniel Williams (Williams), challenges his convictions for larceny[1] and unauthorized use of a vehicle.[2] Williams contends that the district court erred in allowing the admission of evidence in violation of W.R.E. 404(b) and this Court's case law interpreting that rule. Furthermore, he contends that the prosecutor improperly elicited testimony from his co-defendant that he had been convicted of and sentenced for crimes arising out of the same circumstances as the crimes for which Williams was charged. Williams also contends that the prosecutor committed fundamental error by commenting on Williams' right to remain silent. Finally, Williams contends that the district court erred in its computation of the restitution ordered in the sentence imposed. We will reverse and remand for a new trial.

### ISSUES

[¶ 2] Williams raises these issues:

I. Whether the trial court erred in the admission of evidence under W.R.E. 404(b)?

II. Whether plain error occurred when a witness, Jay Dunford, testified that he was convicted of offenses arising out of the same circumstances that led to [Williams'] charges, and when the State presented argument on this same topic?

III. Whether the prosecutor improperly commented on [Williams'] exercise of his constitutional right to [remain silent]?

IV. Whether the trial court erred in its order of restitution?

The State enlarges on the issues somewhat:

I. Whether plain error occurred in the admission of uncharged misconduct evidence under W.R.E. 404(b) when Jay Dunford testified, without objection, about a prior related theft of saddles and tack from the Esponda Ranch in which both he and [Williams] were involved?

II. Whether plain error occurred when a witness, Jay Dunford, testified that he was convicted of offenses arising out of the same circumstances that led to [Williams'] charges, and when the State presented argument on the same topic?

III. Whether the prosecutor improperly commented on [Williams'] exercise of his constitutional right to silence?

IV. Whether the trial court erred in its order of restitution?

---

1. **§ 6–3–402. Larceny; livestock rustling; penalties.**

   **(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.**

   (b) A bailee, a public servant as defined by W.S. 6–5–101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

   (c) Except as provided by subsection (e) of this section, larceny is:

   **(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more;** or

   (ii) Repealed by Laws 1984, ch. 44, § 3.

   (iii) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if the value of the property is less than five hundred dollars ($500.00).

   (d) Conduct denoted larceny in this section constitutes a single offense embracing the separate crimes formerly known as larceny, larceny by bailee or embezzlement.

   (e) A person who steals any horse, mule, sheep, cattle, buffalo or swine is guilty of livestock rustling which is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,-000.00), or both. [Emphasis added.]
   Wyo. Stat. Ann. § 6–3–402 (LexisNexis 2003).

2. **§ 31–11–102. Unauthorized use of vehicle; penalty.**

   Any person who without specific authority of the owner or his authorized and accredited agent willfully, wantonly, or maliciously takes possession of, or drives, propels or takes away, or attempts to take possession of, drive, propel, or take away a vehicle, the property of another, for the purpose of temporarily making use of the vehicle, or who knowingly aids, abets or assists another in so doing, upon conviction, is guilty of a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both.
   Wyo. Stat. Ann. § 31–11–102 (LexisNexis 2003).

## FACTS

[¶ 3] The facts pertinent to the issues raised in this appeal are relatively brief. On June 18, 2001, Williams was hired as a ranch hand to work on a ranch owned by Gladys Esponda. On August 29, 2001, Esponda hired Jay Dunford as an additional ranch hand. Williams and Dunford worked together, lived in the bunkhouse together, and frequently socialized together, including traveling on the rodeo circuit. Dunford testified that in February of 2002, he and Williams stole saddles from the Esponda Ranch and took them to Billings, Montana, to sell at a tack sale. Dunford asserted that the theft was Williams' idea, although the saddles were offered for sale in Dunford's name and the check representing the proceeds of the sale was mailed to Dunford.[3] Dunford testified that the two split the proceeds from the sale of the stolen saddles in order to have money to go to rodeos.[4] Dunford also related that he and Williams had discussed stealing a horse from the ranch, but that the saddles were easier targets because they were not used. Dunford explained that Gladys Esponda was vulnerable to theft because she had had surgery and was not physically able to oversee all that went on about the ranch.

[¶ 4] After the jury heard this testimony, Williams' attorney lodged an objection to the admission of this evidence citing W.R.E. 404(b).[5] Defense counsel claimed that he had been given no notice of the testimony, and that his objection was tardily made because he was "in shock" at what he was hearing. The record on appeal demonstrates that defense counsel did not file either a general motion for discovery or a motion for notice of the prosecution's intent to offer W.R.E. 404(b) evidence. The record also shows that this testimony by Dunford was not noted in the State's pretrial memoranda as required by the district court's scheduling order (it required a brief summary of each witness's proposed testimony). The district court made an initial ruling that the disputed testimony was admissible under the exceptions to 404(b).[6] After Dunford had completed all of his testimony, including cross-examination, the district court added this to its initial ruling:

THE COURT: We're on the record outside the presence of the jury after the testimony of Mr. Dunford. During the testimony of Mr. Dunford, [defense counsel] made an objection of sorts concerning the sale of Esponda's saddles to someone in Billings; and I just want to point out the real dilemma that the Court was placed in during that objection. At the time of the arraignment, the Court asked for reasonably-anticipated motions to be filed within ten days and gave counsel an extra opportunity to file any motions or legal issue in their trial briefs that were due at the time of the pretrial conference.

---

3. Dunford testified the reason for this is that he had a checking account in which the check could be deposited, whereas Williams did not.

4. Williams testified in his own defense and denied playing any role in the theft or sale of the saddles.

5. **Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes.**

(a) *Character Evidence Generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
(2) Character of Victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prose-

cution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
(3) Character of Witness.—Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) *Other Crimes, Wrongs, or Acts.*—**Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.** *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.* [Emphasis added.]

6. Specifically, the trial court stated: "Well, the Court notes the 404(b) objection, finds that evidence of a prior crime or act is admissible for the reasons set forth by [the prosecutor] in this case based on the Defendant's contest of the horse theft."

And the record does not show any requests for that type of information. The Dunford file was public information. Nothing in that file was made confidential by the Court. The Court has already found that the saddle theft, or alleged saddle thefts, would be admissible evidence. Even though it did not take place exactly at the same time as the alleged horse theft, it was relatively close in time. It was during the employment of the Defendant and the witness, same employer. And the State indicated the purposes for which that information was elicited.

I've never understood the portion of the *Bishop* test that would require the trial court to make some sort of a determination as to how badly the prosecution would need the evidence. But based on the cross-examination of Mr. Dunford, it appears as though they would need to have some additional information regarding opportunity and intent of the defendant.

[Defense counsel], I believe that our case law would allow the defendant to have a jury instruction regarding the alleged saddle thefts and sale in Billings if you want—if you want one that would tell the jury that information was allowed for a limited purpose, you are entitled to it.[7]

[¶ 5] Dunford also testified that in March of 2002, he and Williams made a plan to steal and sell a horse that belonged to Gladys Esponda. On March 24, 2002, they loaded a gray horse owned by her, as well as a sorrel horse owned by Dunford, into a horse trailer owned by the Esponda Ranch, and towed that horse trailer to Sheridan using a pickup owned by the Esponda Ranch, in order to sell both horses.[8] During his testimony, Dunford related that he had confessed to stealing Mrs. Esponda's horse and had been sentenced to a suspended term of imprisonment in the Wyoming State Penitentiary.

[¶ 6] During the State's cross-examination of Williams, the following questions were asked and answered:

Q. (By [the prosecutor]) Did you ever attempt to contact any of the Espondas after [the] 24th of March to tell them that you had sold one of their horses?

A. No.

Q. Now, [defense counsel] asked you if you had ever been questioned by anyone in law enforcement in Johnson County.

Did you ever volunteer any of the information that you just told us today?

A. Not to the best of my recollection.

Q. And, finally, you testified that you left town for Texas on the 28th of March 2002, is that correct?

A. That was the following day, yes.

[¶ 7] Some additional facts will be noted in the course of our discussion of the issues.

## DISCUSSION

### Admission of W.R.E. 404(b) Evidence

[¶ 8] The proceedings in this case are sufficiently irregular so that both as a practical matter, and as a logical matter, it is difficult to analyze them under the rather large number of recent precedents forthcoming from this Court on this subject. Although W.R.E. 404(b) has presented unique and very disquieting problems for many years, in 1993 this Court, in a 3–2 decision, made its first effort to definitively solve those problems:

After reviewing the admission of prior bad acts evidence in this case, and in numerous other cases, we perceive the need for a uniform procedure, to be followed in all cases in which the state proposes to introduce such evidence. In the future, when the state wishes to introduce evi-

---

7. Defense counsel did not request such an instruction and no such instruction was given to the jury.

8. Williams testified that he had tacit authority from Johnny Esponda, Gladys Esponda's son, to sell the gray horse and then buy another horse for the ranch that was better suited for ranch work. Williams was fired by Johnny Esponda on March 27, 2002, for reasons unrelated to the theft of the horse (the theft of the horse wasn't discovered until May of 2002). Williams then said nothing to the Espondas about the sale, nor did he give them the cash proceeds of the sale. Williams claimed he had general authority to use all ranch vehicles, including the use on March 24, 2002, for which he was convicted of unauthorized use of a motor vehicle.

dence of a defendant's prior bad acts, the state carries the initial burden of demonstrating the admissibility of the evidence in the context of the five-part test we outlined above. The state must articulate which Rule 404(b) or other relevant purpose the evidence is specifically being offered to serve, and how the evidence is relevant for that purpose. The defendant must then respond with its arguments why the evidence should not be admitted, addressing issues of relevancy and Rule 403 concerns.

The trial court must then articulate its findings of relevancy and how it weighed probative value against the countervailing factors. If the trial court determines the evidence should be admitted, it must identify the specific purpose for which the evidence is being admitted.

We recommended this procedure in earlier cases to provide this court with a proper record from which it may pursue the question of any abuse of discretion by the trial court in admitting evidence of prior wrongs. *Coleman,* 741 P.2d at 102–05; *Elliott v. State,* 600 P.2d 1044, 1049 (Wyo.1979). We now hold this procedure is mandatory and must be followed, both to provide a sufficient record for our review and to ensure every effort is made to protect a defendant from the unfair prejudice which often accompanies evidence of prior wrongs.

We further hold that, if a defendant requests a limiting instruction, that instruction must inform the jury of the specific purpose for which they may consider the evidence of the prior wrongs, and what they may not infer from the evidence. We find this requirement compelled by the dangerously prejudicial nature of prior bad acts evidence. As noted by one New Jersey Supreme Court Justice:

> Juries in our system of criminal justice, however, are not charged with determining a defendant's guilt based on the defendant's propensity to commit crime. In fact, they are expressly prohibited from doing so. Nevertheless, the overwhelming consensus of empirical studies on the use of prior-crimes evidence for impeachment purposes confirms a point made by one of the researchers in Kalvin and Zeisel's landmark study, The American Jury: that juries exhibit an

> "almost universal inability and/or unwillingness either to understand or follow the court's instructions on the use of defendant's prior criminal record for impeachment purposes. The jurors almost universally used defendant's record to conclude that he was a bad man and hence was more likely than not guilty of the crime for which he was then standing trial."

*Brunson,* 625 A.2d at 1100 (Justice Handler, concurring in part and dissenting in part). The same danger adheres when evidence of prior crimes is introduced for Rule 404(b) purposes, and an instruction merely reciting Rule 404(b) is insufficient to overcome that danger.

Lastly, when this court reviews the admission of prior bad acts evidence, it shall review only the specific purpose(s) for which the trial court permitted the evidence to be introduced. The proponent of the bad acts evidence will not be allowed to advance one reason at trial for admitting the evidence, and then an alternative reason on appeal. While on some rulings we have been willing to uphold a trial court's exercise of discretion when supported by any basis demonstrated in the record, we will not extend this practice to rulings on prior bad acts evidence. To avoid unfair prejudice, evidence of prior wrongs is introduced for limited purposes only, and to review its admission on an entirely different basis would be unfair to the defendant who must confront the evidence as it is presented at trial. [Footnotes omitted.]

*Dean v. State,* 865 P.2d 601, 609–11 (Wyo. 1993).

[¶ 9] In 1996, this Court unanimously modified the *Dean* rule making further reference to that case essentially unnecessary, except for its identification and discussion of the perils inherent in the admission of 404(b) evidence:

> We hold we should follow the lead of the federal courts, and require an appropriate objection to be lodged, at trial or before, to

evidence inadmissible under WYO. R. EVID. 404(b). We adopt as the criteria for the admissibility of evidence claimed, by a pertinent and timely objection, to violate WYO. R. EVID. 404(b) the same test as that articulated in the federal courts. Our trial courts and counsel in criminal cases will have a much broader base of pertinent authority from which they can evaluate the presence of a proper purpose, relevancy, and the possibility of unfair prejudice outweighing the probative value.

We are persuaded the rule requiring an appropriate objection, applied by the United States Court of Appeals for the Tenth Circuit in *United States v. Herndon,* 982 F.2d 1411, 1414–15 (10th Cir.1992), aff'd on appeal after remand, 34 F.3d 1077 (10th Cir.1994), is the correct response to this problem. Our decision is reinforced by a substantially parallel justification also appearing in *Schmunk v. State,* 714 P.2d 724, 739 (Wyo.1986), where we specifically were invited to place the burden of justifying admissibility of hearsay on the state and the court, and we said:

> Appellant suggests that the State must satisfy its burden and the court make a determination of admissibility even though appellee makes no objection to receipt of the hearsay evidence. Appellant is not correct in this contention. **To hold as suggested would impose an impossible burden upon a trial court to, on its own motion, require proof that opposing counsel has not demanded. Besides, opposing counsel may choose not to object to receipt of the offered evidence for many reasons. Trial strategy may dictate no objection; the opposing party may believe the offered evidence will be favorable; the opposing party may believe that impeachment may be more damaging and choose not to exclude the evidence.** (Emphasis added [in original].)

Only when there is a timely objection invoking the rule will there be a requirement that the State justify the evidence as proper under one of the exceptions to character evidence articulated in WYO. R. EVID. 404(b), or the general expansion of that rule (*see Gezzi v. State,* 780 P.2d 972 (Wyo.1989); *Brown v. State,* 736 P.2d 1110 (Wyo.1987); and *Hatheway v. State,* 623 P.2d 741 (Wyo.1981)), and demonstrate that the evidence is relevant for the proposed purpose. The trial court then will be required to evaluate the admissibility of such evidence under WYO. R. EVID. 404(b), and to weigh the probative value of the evidence against the potential for unfair prejudice. That evaluation shall follow the criteria outlined by the Supreme Court of the United States in *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). If requested, an appropriate limiting instruction will be given to the jury. In the absence of an appropriate objection, the accused may raise on appeal a claim of plain error in the admission of evidence of prior bad acts, but it will be incumbent upon the accused to offer case authority specifically foreclosing admission of the evidence under the circumstances of the case. The State then will be free to justify admission of the evidence on any theory of relevancy permitted by WYO. R. EVID. 404(b). If the objection is lodged and the evaluation under *Huddleston* is made, the State will be limited to the theory of admissibility advanced to and approved by the trial court.

*Vigil v. State,* 926 P.2d 351, 354–55 (Wyo. 1996).

[¶ 10] Continuing its discussion, this Court then abandoned the five-part test set out in *Bishop v. State,* 687 P.2d 242, 246 (Wyo.1984), in favor of this construct:

> We adopt the four-part standard for determining admissibility of evidence pursuant to FED. R. EVID. 404(b), which has been adapted by the United States Courts of Appeals and other state courts from language found in *Huddleston.* The Supreme Court of the United States, in considering a claim that the trial court must make an initial determination that the prior bad act has been established by a preponderance of the evidence, said:
>
> > We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b). See *Michel-*

*son v. United States*, 335 U.S. 469, 475–476, 69 S.Ct. 213, 218–219, 93 L.Ed. 168 (1948). We think, however, that the protection against such unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice, see Advisory Committee's Notes on Fed. Rule Evid. 404(b), 28 U.S.C.App., p. 691; S.Rep. No. 93–1277, at 25; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the purpose for which it was admitted. See *United States v. Ingraham*, 832 F.2d 229, 235 (C.A.1 1987).

*Huddleston*, 485 U.S. at 691–92, 108 S.Ct. at 1502.

In *Herndon*, 982 F.2d at 1414, the United States Court of Appeals invoked *Huddleston* as the premise for articulating a test for admissibility of prior bad act evidence saying:

> During its prosecution of the VIN alteration and removal counts, the government introduced evidence that Herndon possessed the items identified in the forfeiture count. Herndon did not object to the introduction of this similar act evidence at trial. He now argues that the evidence showed only his propensity to engage in illegal conduct and, therefore, the district court erred by allowing its admission. We disagree.
>
> Federal Rule of Evidence 404(b) provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other pur-

poses, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

> In *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court articulated a four-part standard for determining the admissibility of Rule 404(b) evidence. **Such evidence is admissible if: 1) the evidence is offered for a proper purpose; 2) the evidence is relevant; 3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and 4) upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.** *Id.* at 691–92, 108 S.Ct. at 1502; *cf. United States v. Robinson*, 978 F.2d 1554 (10th Cir.1992). (Emphasis added [in original].)
>
> We adopt the four-part standard for the admission of Rule 404(b) evidence as articulated by the 10th Circuit Court of Appeals in *Herndon* and the body of federal case law that accompanies it. Other federal courts of appeals have embraced the Huddleston four-part standard.... We join the United States Courts of Appeals and other state courts, which have adopted the four-part standard for determining admissibility of evidence pursuant to FED. R. EVID. 404(b), perceived to have been announced in *Huddleston*.

*Vigil*, 926 P.2d at 356–57.

[¶ 11] Unfortunately, the problems inherent in the widespread use of W.R.E. 404(b) evidence in criminal cases have not yet been solved, and we are called upon to address them many times each year. In many instances, our decisions have made subtle and not so subtle changes to the *Vigil* standard. For instance, in *Beintema v. State*, 936 P.2d 1221, 1224 (Wyo.1997) (where defendant did not object to 404(b) evidence) we held:

> We do not apply the five-part test which we adopted in *Dean* and modified in *Vigil* to determine whether the other bad acts evidence in this case was admissible under W.R.E. 404(b) because that analysis is intended to be conducted at the trial level rather than at the appellate level. *Spencer*

*v. State,* 925 P.2d 994, 997 (Wyo.1996). Instead, we must determine whether the admission of the evidence amounted to plain error. *Id.*

A three-part test has been established for determining whether an error may achieve the status of plain error. First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.

*Bradley v. State,* 635 P.2d 1161, 1164 (Wyo.1981). *See also Vigil,* 926 P.2d at 357.

Our decision concerning the second prong of the plain error analysis—whether a clear and unequivocal rule of law was violated—is determinative of this issue. When evidence " 'forms part of the history of the event or serves to enhance the natural development of the facts,' " that evidence is admissible as long as its probative value outweighs its prejudicial effect. *Crozier v. State,* 723 P.2d 42, 49 (Wyo. 1986) (quoting *Commonwealth v. Evans,* 343 Pa.Super. 118, 494 A.2d 383, 390 (1985)). *See also Vigil,* 926 P.2d 351; *McCone v. State,* 866 P.2d 740, 752 (Wyo. 1993). An obvious purpose for presenting the evidence of Appellant's other marihuana deliveries to Mr. Huskinson was to enhance the natural development of the facts in this case. The evidence of the continuing relationship between Mr. Huskinson and Appellant was relevant to help the jury understand the context of the charged delivery. Furthermore, the testimony about the prior deliveries was relevant in showing how Mr. Huskinson was able to identify Appellant as the man who had sold the marihuana to him. W.R.E. 404(b); *see also Johnson v. State,* 872 P.2d 93 (Wyo.1994).

While the evidence of the periodic drug transactions between Mr. Huskinson and Appellant was obviously prejudicial to Appellant, the probative value of the evidence justified its admission because it was a necessary part of the history of the charged crime. The other bad acts evidence was, therefore, admissible, and no violation of a clear and unequivocal rule of law occurred when it was admitted at the trial or when the prosecutor commented on it during his opening statement.

*Also see Solis v. State,* 981 P.2d 28, 29–34 (Wyo.1999).

[¶ 12] The problems inherent in the "timely objection" requirement of *Vigil* resulted in this additional modification:

From this proposition then followed the specific holding that has led to the problem so well exemplified by the instant case:

Only when there is a timely objection invoking the rule will there be a requirement that the State justify the evidence as proper under one of the exceptions to character evidence articulated in Wyo. R.Evid. 404(b), or the general expansion of that rule ..., and demonstrate that the evidence is relevant for the proposed purpose. The trial court then will be required to evaluate the admissibility of such evidence under Wyo.R.Evid. 404(b), and to weigh the probative value of the evidence against the potential for unfair prejudice. That evaluation shall follow the criteria outlined by the Supreme Court of the United States in *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

*Vigil,* 926 P.2d at 355. The problem, of course, is that if the State is allowed to withhold and secrete its W.R.E. 404(b) evidence, the defendant's opportunity to file a timely objection is largely illusory.

It is time to correct that procedural deficiency. The *Vigil* process is a judicially mandated process, so it is not inappropriate for us here to modify it. We now hold that where a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as the making of a timely objection to the introduction of such evidence. The State must then respond with sufficient information to meet the balance of the *Huddleston* test adopted in *Vigil.* Not only will such a rule enhance the

defendant's prospects of receiving due process and a fair trial, it will also enhance the district court's ability to reflect and rule upon a significant evidentiary issue. Rulings on uncharged misconduct evidence are too important to be made in the heat and pressure of a trial, with the jury twiddling its thumbs in the next room.

*Howard v. State*, 2002 WY 40, ¶¶ 22–23, 42 P.3d 483, ¶¶ 22–23 (Wyo.2002).[9]

[¶ 13]  In *Gleason v. State*, 2002 WY 161, ¶¶ 16–18 and 26–30, 57 P.3d 332, ¶¶ 16–18 and 26–30 (Wyo.2002), we endeavored to summarize, clarify, and emphasize the importance of adherence to the standards that evolved over the years from the publication of *Dean* (as well as many cases that predated *Dean* ) through October of 2002 (the instant case was tried on March 17, 2003):

The structure of W.R.E. 404 is significant in the analysis of the admissibility of uncharged misconduct evidence. First, subsection (a) forbids use of evidence of a person's character to prove that he acted in conformity with that character at a particular time. For instance, in a prosecution for battery, the prosecutor cannot introduce evidence that the defendant has a violent temper for the purpose of proving that, given his violent temper, the defendant must have committed the battery. W.R.E. 404(a) goes on to provide, however, that there are circumstances in which evidence of a person's character may be admitted to prove that he acted in conformity therewith on a particular occasion. In the specific situations enumerated, character evidence is admissible in direct contravention of the general principle that character evidence is not admissible to prove conduct.

The pattern of W.R.E. 404(b) is not the same. The general principle that character evidence may not be admitted to prove conduct remains intact in the first sentence. But "[e]vidence of other crimes, wrongs, or acts," which logically may or may not be character evidence, is admissible to prove things other than character. Consequently, the exceptions to the rule found in subsection (a) are not of the same nature as those found in subsection (b). The former allow evidence of character to prove conduct; the latter allow evidence of specific instances of conduct to prove "consequential facts" such as intent or knowledge. *Virgilio v. State*, 834 P.2d 1125, 1128 (Wyo.1992); *Grabill v. State*, 621 P.2d 802, 808 (Wyo.1980). Under neither subsection is evidence admissible if the thrust of the evidence is only to demonstrate that the defendant has a disposition to commit crimes. *Daniel v. State*, 923 P.2d 728, 733 (Wyo.1996) (*quoting Dean v. State*, 865 P.2d 601, 606 (Wyo.1993), *abrogated and modified on other grounds by Vigil v. State*, 926 P.2d 351 (Wyo.1996)).

Admissibility under W.R.E. 404(b) is not limited to the purposes set forth in the rule, and we have adopted a liberal approach toward admitting uncharged misconduct evidence. *Mitchell v. State*, 865 P.2d 591, 596 (Wyo.1993); *Bishop v. State*, 687 P.2d 242, 245 (Wyo.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985), *abrogated on other grounds by Vigil*, 926 P.2d at 356–57. The listed exceptions are illustrative rather than exclusive. *Gezzi v. State*, 780 P.2d 972, 974 (Wyo.1989). Nevertheless, because uncharged misconduct evidence carries an inherent danger for prejudice, we have also adopted a mandatory procedure for testing its admissibility: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. *Vigil*, 926 P.2d at 357 (*quoting United States v. Herndon*, 982 F.2d 1411, 1414 (10th Cir.1992)).

---

9.  Whether a defense attorney's failure to file a general discovery motion, or a motion for notice of W.R.E. 404(b) evidence, may constitute ineffective assistance of counsel is not before us. However, given the magnitude of the W.R.E. 404(b) "problem" and the clarity with which the "problem" has been articulated by this Court, we would be hard pressed to justify such failures under any circumstances. *See, e.g., Page v. State*, 2003 WY 23, 63 P.3d 904 (Wyo.2003).

We do not apply this test on appeal; rather, it is intended to be conducted by the trial court. *Beintema v. State,* 936 P.2d 1221, 1224 (Wyo.1997). Our role is to determine whether admission of the evidence was error. *Id.; Spencer v. State,* 925 P.2d 994, 997 (Wyo.1996). Generally, the standard for review of rulings under W.R.E. 404(b) is abuse of discretion. *Johnson v. State,* 936 P.2d 458, 462 (Wyo.1997) (*quoting Sturgis v. State,* 932 P.2d 199, 201 (Wyo.1997)). However, where no trial objection occurred, the plain error standard applies. *Beintema,* 936 P.2d at 1224; *Spencer,* 925 P.2d at 997. To prove plain error, an appellant must demonstrate that the record clearly shows an error that has transgressed a clear and unequivocal rule of law and has adversely affected a substantial right of the appellant. *Weidt v. State,* 2002 WY 74, ¶ 8, 46 P.3d 846, 851 (Wyo.2002).

. . . .

Despite the resolution of this issue, we feel compelled to address in more detail the difficulties encountered in the appellate review of the admission of uncharged misconduct evidence under W.R.E. 404(b). The primary step in propounding uncharged misconduct evidence is identification of a proper purpose for its admission. In that regard, we have previously held that the State need not pinpoint but one purpose for admission of such evidence. *Sturgis,* 932 P.2d at 203. Nevertheless, it is incumbent upon the proponent to identify such purpose or purposes with specificity because, without such specificity, the balance of the *Vigil* test cannot be applied. For evidence to be relevant, we must know the fact question to which it is relevant. For evidence to be probative, we must know what it is meant to prove.

For proper appellate review of the admissibility of evidence under W.R.E. 404(b), the record must reflect that the trial court required the State not only to identify the proper purpose for which uncharged misconduct evidence is being offered, but also to explain how or why it is probative, and why it is more probative than prejudicial. In that regard, we have twice set out in a footnote the process that should be followed by the trial court in making that analysis. To make sure there is no doubt in the future that this is a required process, we will repeat it now, in the body of this opinion:

In determining the probative value of prior bad acts evidence, the trial court should consider the following factors:

1. How clear is it that the defendant committed the prior bad act?

2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?

3. Is other evidence available?

4. Is the evidence unnecessarily cumulative?

5. How much time has elapsed between the charged crime and the prior bad act?

Evidence is unfairly prejudicial if it tempts the jury to decide the case on an improper basis. In balancing against its probative value the unfair prejudice created by the evidence, the trial court should consider the extent to which the evidence distracts the jury from the central question whether the defendant committed the charged crime. The trial court should weigh these additional factors against the probative value of the evidence:

1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.

2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.

3. The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.

4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the in-

troduction of that act will tend to place the defendant in a different and unfavorable light.

5. The comparable relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).

6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Rigler,* 941 P.2d at 737 n. 1 (*citing Dean,* 865 P.2d at 609–10 n. 2).

In *Rigler,* 941 P.2d at 737–38, we held that, so long as the record revealed that the trial court had subjected proposed uncharged misconduct evidence to the appropriate test of its probative value and prejudicial effect, the trial court need not make express findings on the record on each of these factors. Since that opinion was published, however, we have repeatedly been called upon to assess a trial court's exercise of discretion on such rulings, and we now remind the trial courts that, while express findings on each factor are not necessary, abuse of discretion, or the lack thereof, cannot be determined by reviewing a record that contains no information as to how that discretion was exercised.

We have a well-established standard for analyzing claims for abuse of discretion:

We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. *Griswold v. State,* 2001 WY 14, ¶ 7, 17 P.3d 728, ¶ 7 (Wyo.2001). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.* "In the absence of an abuse of discretion, we will not disturb the trial court's determination." *Id.* The burden is on the defendant to establish such abuse. *Trujillo*

*[v. State,* 2 P.3d 567] at 571 [ (Wyo. 2000)].

*Skinner v. State,* 2001 WY 102, ¶ 25, 33 P.3d 758, 766 (Wyo.2001), *cert. denied,* 535 U.S. 994, 122 S.Ct. 1554, 152 L.Ed.2d 477 (2002). In applying that standard, we cannot determine whether conclusions were drawn from objective criteria if we do not know what criteria were applied. We cannot determine whether sound judgment was exercised under the circumstances if we do not know what circumstances were considered. We cannot determine whether the trial court acted arbitrarily or capriciously if we do not know what the trial court did in reaching its decision.

In future cases involving the admissibility of evidence under W.R.E. 404(b), the record shall reflect the trial court's identification of the purpose or purposes for admission of the evidence, the findings and conclusions establishing relevance and probative value, and the factors considered in balancing probative value against the potential for unfair prejudice. The "shotgun approach" of listing every conceivable purpose for admissibility, followed by a bald statement that probative value outweighs prejudicial effect will no longer be sufficient. While the trial court need not make an express finding on every factor from *Dean* and *Rigler,* the record must contain sufficient findings to support the trial court's conclusions. The burden, of course, will be upon the proponent of the evidence to supply the foundation for its admission. [Footnotes omitted.]

*Also see Hart v. State,* 2002 WY 163, ¶¶ 8–18, 57 P.3d 348, ¶¶ 8–18 (Wyo.2002).

[¶ 14] This case presents the exact circumstances that *Gleason,* as well as the cases upon which *Gleason* is based, was intended to remedy. We are at this crossroads because all of the procedures designed to govern these circumstances were given short shrift or ignored altogether. The prosecutor failed to provide a "brief summary of the testimony of each [witness]," as directed in the district court's scheduling order. The prosecutor revealed only that Dunford "may be called to testify actions [*sic* ] of himself and Defendant on dates in question." The

only date in question, based on the crimes charged, was March 24, 2002. The prosecutor's trial brief is otherwise devoid of any specific hint that the stolen saddles were going to be a subject of the State's case-in-chief at trial. Defense counsel did not object to the meagerness of the prosecutor's trial brief, nor did he file a discovery motion or a request for notice of proposed W.R.E. 404(b) evidence. Defense counsel's objection at trial was tardy, but it was recognized by the district court for just what it was, i.e., notice that the procedures detailed in *Gleason* were required to be followed so that appellate review of the issue would be possible. The prosecutor merely recited the laundry list that is contained in Rule 404(b), without more, as a justification for his line of questioning, and the record does not give us any intimation of the reasoning process employed by the trial court. In this case we deem this to be especially important because Dunford testified that Williams was his accomplice in the theft of the saddles and Williams specifically denied any participation in that event. Although corroboration is not a necessity, we note with concern that no evidence was offered by the prosecution that corroborated Dunford's testimony about the saddle thefts. We think these circumstances required the district court to take careful measure of the *Gleason* directive, and that simply was not done. For this reason we are unable to conduct meaningful appellate review of this matter and we are compelled to reverse Williams' convictions and remand for a new trial.

**Accomplice/Co-defendant Testimony**

[¶ 15] In addition to his testimony about the theft of the saddles, Dunford testified that he and Williams, acting together, stole a horse from Gladys Esponda. Dunford went on to testify that he pleaded guilty to that crime and had been sentenced for it. Defense counsel did not object to this testimony; indeed, he thoroughly cross-examined Dunford about his plea bargain, guilty plea, and lenient sentence.

[¶ 16] Just as a defendant in a criminal trial has a fundamental right not to be convicted of a crime on the basis that, since he committed a previous crime, it is likely that he committed the crime charged, there is no doubt that a defendant's right to a fair trial embraces a right not to be convicted, in whole or in part, upon the guilty pleas of his conspirators. *Capshaw v. State*, 11 P.3d 905, 912 (Wyo.2000). Defense counsel did not interpose an objection, and so we must review this asserted error under the plain error standard. The record is clear that the error urged occurred, and the State concedes that point. The State also concedes that the error violated a clear and unequivocal rule of law. The final part of our analysis is to ascertain whether a substantial right belonging to Williams was materially abridged. *Capshaw*, 11 P.3d at 911–12. The prosecutor's conduct cannot be condoned. We are alarmed to continue to see that so many prosecutors appear to be unaware of the fundamental principles that apply to their role in the criminal justice system (and affirmance on the harmless error basis does not seem to deter prosecutors from violating this fundamental precept of the criminal justice system), and we are not convinced by the record that Williams intentionally incorporated Dunford's guilty plea into his trial strategy. This case matched Williams' claims against Dunford's, and defense counsel did seize upon Dunford's guilty plea and his sentence to probation as a motive to scapegoat Williams and to further his own interest in avoiding serving any further time in jail. We repeat here what we said in *Capshaw*:

> Finally, we offer this additional suggestion for the trial courts so as to deter similar potentially fatal errors from occurring in future cases. As noted above, as a general rule, admission of evidence that a codefendant or conspirator has pleaded guilty or been found guilty is not admissible in the trial of another codefendant or conspirator. If such evidence is introduced by the prosecution, it is error. Recently, we were compelled to reverse a conviction on these very grounds because the prosecution improperly used evidence of guilty pleas by co-defendants. *Mazurek v. State*, 10 P.3d 531, 535–541 (Wyo.2000). If no objection is interposed by the defense, we will review such an error under the plain error standard. Likewise, if an

objection is made, the error is subject to review for harmless error. In either event, a clear and comprehensive instruction to the jury (whether requested by the defense or given by the trial court sua sponte) may have a salutary effect in either a plain error analysis or a harmless error analysis. Trial courts should be alert to this potential pitfall when a codefendant or conspirator is called as a witness for the prosecution under circumstances similar to the instant case. The prosecution should be cautioned about introducing the subject of a guilty plea or conviction into another defendant's trial, and the trial court should be alert to properly instruct the jury to disregard any such testimony should it be called to the jury's attention. As can be gleaned from a review of the American Law Reports annotation cited above, there are many circumstances where prejudice is not found. One significant factor in such a finding may be the guidance provided by the trial court in such an instance.

*Capshaw,* 11 P.3d at 913.

[¶ 17] Here, the prosecution broke one of the cardinal rules of the concept of a fair trial by introducing this evidence in its case-in-chief. If defense counsel wished to use the guilty plea and light sentence to its advantage by cross-examining about it, then that was its prerogative, and the State then could have used that sort of information to whatever advantage it perceived appropriate. No limiting instruction was requested or offered by defense counsel, and none was given by the trial court sua sponte. This constitutes yet another inexplicable lapse on the part of the defense attorney. In the light of the peculiar circumstances of this case, the fundamental nature of the error, and the clarity of the guidance provided to prosecutors, defense counsel, and trial courts over the years, we are unable to conclude that this error was harmless and that it was not prejudicial to Williams. Thus, it constitutes a second independent basis for reversing the conviction.

## Comment on the Right to Remain Silent

[¶ 18] At the outset we need to emphasize that this issue requires us to ad-

dress one of the most fundamental rights accorded a defendant in our criminal justice system. It is very clear from the transcript that the prosecutor asked Williams if he had volunteered any of the information that made up his version of the alleged horse theft when law enforcement officers questioned him. It is also clear in the context of the trial proceedings that Williams was in custody in Johnson County when he was questioned. Williams' answer, of course, was to the effect that he had not. Under our established precedents this was clearly a comment on Williams' right to remain silent. *See Tortolito v. State,* 901 P.2d 387, 389–91 (Wyo.1995). Because no objection was made, we must assess this claim of error under the plain error doctrine set out above. We have already concluded that the error is clear from the record and that it violated a clear and unequivocal rule of law. There was only one purport to the question, and that was "Why did you stand silent when questioned by the police, if you have such a good story/defense?" Given the circumstances of this case, we are compelled to conclude that this comment was gratuitous, and hopefully made in ignorance of the applicable law, rather than made knowing full well its import. We do not see the need, nor would it advance our jurisprudence in this regard, to attempt to equate these circumstances with those wherein we have found fleeting comments, or equivocal comments, either not prejudicial or harmless. We hold that the error is significant enough here that reversal is mandated on this basis as well.

## Calculation of Restitution

Williams contends that the district court erred by including in the sentence a provision that Williams be required to pay Gladys Esponda $585.00 for maintenance of the stolen horse while it was in the possession of Bob Douglas, the person to whom it was sold. The presentence report indicates that Douglas was paid this amount for "feed, storage, care, and horseshoes." Johnny Esponda testified that the payment was made because "... there was some transportation costs, some riding. He had a boy riding the horse. Brand inspection. He had the horse shod, and the vet give [*sic*] the horse shots."

Williams contends that this restitution item is not supported by evidence sufficient to afford a reasonable basis for estimating the loss, and that it represents, for the most part, expenses that would have been incurred by the Espondas whether or not the horse had been stolen. The State contends that the evidence is sufficient and that the expenses were incurred as a direct result of the theft.

[¶ 20] Because we reverse and remand for a new trial, we need not address this issue dispositively. However, we trust defense counsel will make the appropriate presentation to the district court if this matter arises then. *See Bush v. State,* 2003 WY 156, ¶¶ 9–15, 79 P.3d 1178, ¶¶ 9–15 (Wyo.2003), and *Stowe v. State,* 10 P.3d 551, 553 (Wyo. 2000).

### CONCLUSION

[¶ 21] We reverse for the reasons that the district court failed to apply the proper standard to the admission of W.R.E. 404(b) evidence, because the admission of Dunford's guilty plea was prejudicial error in these circumstances, and because the prosecutor made a direct comment on Williams' right to remain silent that prejudiced his right to a fair trial. The case is remanded to the district court for a new trial.