2006 WY 113

**Michael David TREVINO, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–93.**

Supreme Court of Wyoming.

Sept. 11, 2006.

Representing Appellant: Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Michael David Trevino (Trevino) was convicted by a jury of one count of obtaining property by false pretenses in violation of Wyo. Stat. Ann. § 6-3-407(a)(i) (LexisNexis 2005).[1] On appeal, he chal-

---

* Chief Justice at time of expedited conference.

1. At the time the incident giving rise to the charge against Trevino occurred, the statute provided:

§ 6-3-407. Obtaining property by false pretenses; penalties.

(a) A person who knowingly obtains property from another person by false pretenses with intent to defraud the person is guilty of:

lenges the sufficiency of the evidence to support the conviction and the propriety of the admission of certain uncharged misconduct evidence. Finding sufficient evidence in the record to support the conviction and no error in the admission of evidence, we affirm.

## ISSUES

[¶ 2] Trevino sets forth two issues for consideration:

*Issue I*

Whether there is sufficient evidence to sustain a conviction for felony obtaining property by false pretenses

*Issue II*

Whether the district court erred when it admitted Rule 404(b) evidence which was not relevant to the crime charged.

## FACTS

[¶ 3] On September 3, 2003, Trevino went to L & K Sales in Sheridan, Wyoming, to purchase a Ford F-800 truck. Trevino represented that the vehicle was being purchased for his house moving business, Triumph, Inc. Trevino was the president and registered agent of that company. He was accompanied by Triumph's secretary, Shannon Keeves (Keeves), who was also his girlfriend. At the purchase, Trevino indicated to Tim Brown, the manager of L & K, that he wanted the truck titled in his name and that of a "Michelle Trevino." Keeves, who was not identified to Brown, expressed surprise at this but proceeded to sign all of the documents as "Michelle Trevino."[2]

[¶ 4] The purchase price of the truck was $9,000, which Trevino paid with two trade-ins and a check for $6,000 drawn on Triumph's bank account. After Trevino and Keeves had left, Brown noticed that the check had been signed by a "Shannon Keeves" and not the "Michelle Trevino," who he believed had been at the sale and signed the documents.

Brown called Triumph, and Keeves, in her "Michelle Trevino" persona, answered and informed him that Keeves was the bookkeeper and had pre-signed the check at the office. Also that day, Brown contacted Triumph's bank and verified that the account contained sufficient funds to cover the check.

[¶ 5] The next business day, Monday September 8, 2003, Brown was informed by Triumph's bank that a stop payment order had been placed on the check. Brown contacted Trevino who explained that a check for $7,500 to him had bounced and, therefore, he had placed a stop payment on all the large, outstanding checks on the account. He maintained that he was on his way to collect the $7,500 and that payment to Brown would be forthcoming. The next day, Brown again called Trevino who claimed that he had collected the money and that a cashier's check for the truck was in the mail. Trevino did not report any problems with the truck. Brown never received a cashier's check, and he never heard from Trevino again regarding payment or the truck.

[¶ 6] Several weeks later, Brown referred the matter to the Fargo, North Dakota, police who contacted Trevino. Trevino claimed that there were mechanical problems with the truck and that the dispute was a civil matter. A demand for payment sent by certified letter to Trevino was returned unsigned. A civil action was filed against Trevino, Keeves, and Triumph, and a default judgment was subsequently obtained with L & K reclaiming possession of the truck from an impound lot in February of 2004.

[¶ 7] The Sheridan, Wyoming, police department investigated the matter in conjunction with a series of bad check claims against Trevino. During the investigation, Keeves claimed that the stop payment order had been made because the truck had broken down in Montana and had to be towed back to Fargo. She also asserted to the police

---

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more[.]

Wyo. Stat. Ann. § 6-3-407 (LexisNexis 2003). Effective July 1, 2004, obtaining property by false

pretenses is a felony if the value of the property is $1,000.00 or more. 2004 Wyo. Session Laws, ch. 126, § 1.

**2.** It was subsequently disclosed that Michelle Trevino is actually Trevino's daughter who was seventeen years old at the time.

that Trevino did not have anything to do with the management of Triumph.

[¶ 8] Trevino was charged with one count of obtaining property by false pretenses in violation of Wyo. Stat. Ann. § 6–3–407(a)(i). During the trial, Robert Keeves, Shannon Keeves's father, who was vice president of Triumph and its bookkeeper, testified that Trevino had a history of writing checks despite not having sufficient funds in the account to cover them. He cited a specific incident in which Trevino wrote a check for twenty thousand dollars to cover a lease down payment and then later placed a stop payment on the check. He also indicated that he would have to make loans to Triumph to cover checks written by Trevino. Ultimately, the jury returned a guilty verdict and Trevino now appeals.

## STANDARD OF REVIEW

[¶ 9] When reviewing a sufficiency of the evidence claim in a criminal case, we "assess whether all of the evidence presented is adequate to form the basis for an inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State." *Michaelis v. State*, 2005 WY 80, ¶ 3, 115 P.3d 1098, 1100 (Wyo.2005) (quoting *Lopez v. State*, 2004 WY 28, ¶ 16, 86 P.3d 851, 855 (Wyo.2004); and *Estrada–Sanchez v. State*, 2003 WY 45, ¶ 6, 66 P.3d 703, 707 (Wyo.2003)).

We leave out of consideration the evidence presented by the unsuccessful party which conflicts with the successful party's evidence and afford every favorable inference to the successful party's evidence which may be reasonably and fairly drawn from that evidence. Even though it is possible to draw other inferences from the evidence presented, the jury has the responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Michaelis*, ¶ 3, 115 P.3d at 1100.

[¶ 10] We review claims of error in the admission of evidence under the following standard:

Evidentiary rulings are within the sound discretion of the trial court.... This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria. It also means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the trial court's determination. The burden is on the defendant to establish such abuse.

*Farmer v. State*, 2005 WY 162, ¶ 8, 124 P.3d 699, 703 (Wyo.2005) (quoting *Holloman v. State*, 2005 WY 25, ¶ 10, 106 P.3d 879, 883 (Wyo.2005)).

## DISCUSSION

[¶ 11] The jury was instructed on the elements of the crime of obtaining property by false pretenses as follows:

1. On or about the 3rd day of September, 2003,

2. In Sheridan County, Wyoming

3. The Defendant, Michael David Trevino

4. With intent to defraud another person

5. Knowingly obtained property from that person

6. By false pretenses; and

7. The value of the property obtained was $500.00 or more.

See also *Lopez v. State*, 788 P.2d 1150, 1152 (Wyo.1990). Trevino's insufficiency of the evidence argument is focused on the fourth element: whether there was "intent to defraud." Trevino characterizes the matter as simply a civil dispute over the sale of a defective truck. He asks why he would have provided two trade-ins when, if he had intended to defraud L & K, he could have just written a check for the whole amount. He

argues that the misrepresentation of Keeves's identity was not relevant because that act had no bearing on whether or not he had obtained the truck. He cites the fact that Brown verified that the account had sufficient funds in it to cover the check for the truck as indicative of a lack of intent to defraud. Trevino insists that the stop payment was placed on the check because of the dispute over the truck, and that to the extent that his account did not have sufficient funds in it at the time, was not a reflection of intent to defraud but simply of how he normally operated his business. Trevino concludes that the reasonable inferences from all of the evidence adduced at trial are not sufficient to establish that he had the requisite specific intent to obtain the truck by false pretenses.

■ [¶ 12] Intent to defraud is an essential element of the crime of obtaining property by false pretenses that may be inferred from the defendant's conduct and circumstantial evidence. *Fitzgerald v. State*, 599 P.2d 572, 577 (Wyo.1979) (citing *Beane v. State*, 596 P.2d 325 (Wyo.1979); and *Driver v. State*, 589 P.2d 391 (Wyo.1979)). With respect to situations in which the property was obtained by writing a bad check, we have said that there is sufficient evidence that the crime of obtaining property by false pretenses has been committed rather than a violation of the insufficient funds statute where:

> (1) the accused actually obtains property by writing a bad check, and (2) the false representation is more than a simple express or implied statement that the check is good, and (3) all of the other elements of the crime of obtaining property by false pretenses are met.

*Barker v. State*, 599 P.2d 1349, 1352 (Wyo. 1979). The evidence and the reasonable inferences derived from it show that in conjunction with the purchase of the truck, Trevino made false representations beyond mere representation that his check was good with the intent to defraud L & K of its property.

■ [¶ 13] The record establishes the following facts: Keeves, at Trevino's behest, falsely represented herself as "Michelle Trevino" and signed legal documents during the sale. Keeves continued the deception when contacted later that same day by Brown regarding the signature on the check. In a conversation with Brown after the stop payment had been placed on the check for the truck, Trevino explained that the stop payment was necessary because a check Trevino had deposited in his account had bounced leaving insufficient funds to cover the check to L & K, and that once that money had been recouped, payment would be forthcoming. The next day in another conversation with Brown, Trevino claimed that he had collected the money and that a cashier's check was "in the mail." The cashier's check was never received by Brown or L & K. Trevino claimed to the police investigators that the stop payment had been placed on the check because of mechanical problems with the truck. Trevino never notified Brown or L & K about any alleged problems with the truck, and he never sought to recoup his trade-ins or their monetary value.

[¶ 14] These facts are not disputed. The false representations made to Brown by Keeves at Trevino's behest during the sale and the subsequent phone call later that day, along with those made by Trevino himself regarding payment for the truck, are sufficient to satisfy the requirement of *Barker* that there be more than simply an express or implied representation that the check was good. Trevino's claim that Keeves's deception was not relevant because he could have obtained the truck without her signatures as "Michelle Trevino" on the sale documents is beside the point. The fact is that Keeves did engage in deception at Trevino's direction during the purchase of the property, and it was on that basis that the transaction was completed. Trevino's subsequent false statements regarding payment after the check was stopped support an inference that Keeves's deception was part of a plan or scheme to obtain the property.

[¶ 15] The evidence is also sufficient to establish intent to defraud. Trevino's claim that the entire matter was simply a commercial dispute cannot withstand scrutiny of the evidence. We have already noted the false representations made by Trevino and Keeves. Beyond that, Trevino's (and Keeves's) actions were not consistent with

what one would expect from a person who had ostensibly just been sold a "lemon." Trevino claimed to police investigators that the stop payment was placed on the check because the truck had broken down; yet when Brown contacted him regarding the check, Trevino related a story about how a deposited check he received had bounced and that he needed to collect on it to have sufficient funds to pay for the truck. Trevino continued the story the next day when he informed Brown that he had the money and that a cashier's check was in the mail. Of course, there was no cashier's check, and Trevino never replied to any subsequent inquires by L & K for its money. Under the circumstances, one would have expected a reasonable person in Trevino's position to have sought to have L & K repair the truck, renegotiate its price, or void the deal by returning the truck and obtaining the return of his trade-ins or their value. At a bare minimum, they would have at least informed Brown of the problems with the truck at the time he called to inquire about the stopped check. Trevino's failure to elect any of those options logically supports a reasonable inference that he, in fact, had no intention of paying for the truck while retaining possession of it. The evidence is sufficient to support the conviction for obtaining property by false pretenses.

[¶ 16] In his second issue, Trevino challenges the district court's admission of certain uncharged misconduct evidence. Specifically, he objected to the testimony provided by Robert Keeves, a Triumph vice president and bookkeeper. Mr. Keeves described how Trevino had written a twenty thousand dollar check to cover the down payment on a lease with a transportation company despite his informing Trevino that the account did not have sufficient funds to cover the check. Mr. Keeves related that Trevino had to subsequently place a stop payment on the check. Mr. Keeves also testified that Trevino would write checks of which Mr. Keeves was not aware, and he would have to loan money to Triumph to cover them. Mr. Keeves testified that Trevino would count on future revenues to cover these expenses. Trevino claims that the prejudicial nature of that testimony outweighed any probative value it may have had as the jury could have been tempted to punish him for the uncharged misconduct rather than for the conduct charged.

[¶ 17] Admissibility of a defendant's uncharged misconduct is governed by W.R.E. 404(b):

*Other crimes, wrong, or acts*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

When a defendant files a pretrial demand for notice of the State's intent to introduce evidence under W.R.E. 404(b), it is treated as a timely objection to the introduction of such evidence. *Howard v. State,* 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo.2002). The filing of the demand for notice triggers a mandatory procedure wherein the State must explain the precise purpose for which the evidence is offered, why it is relevant, and why the probative value of the evidence does not substantially outweigh its potential for unfair prejudice. If the evidence is admitted, the district court must articulate on the record the purpose or purposes for which it admitted the evidence, its findings and conclusions establishing relevance, and which of the enumerated factors we have set forth in our case law for balancing probative value against the potential for unfair prejudice the court considered in reaching its decision. *Williams v. State,* 2004 WY 117, ¶ 13, 99 P.3d 432, 440–42 (Wyo.2004). Trevino does not allege that the State or district court failed to comply with the required procedures nor does he challenge the relevancy of the evidence. His allegation is only that the district court incorrectly concluded that the probative value was not substantially outweighed by the prejudicial nature of the uncharged misconduct evidence. Our review then is confined to a determination of whether the district court's conclusion constituted an abuse of discretion.

[¶ 18] The crime of obtaining property by false pretenses is a specific in-

tent crime in Wyoming. *Perritt v. State,* 2005 WY 121, ¶ 18, 120 P.3d 181, 190 (Wyo. 2005) (citing *Lopez v. State,* 788 P.2d 1150, 1152 (Wyo.1990); and *Miller v. State,* 732 P.2d 1054, 1063–64 (Wyo.1987)). Citing the State's burden to prove specific intent, the district court admitted the evidence for the purpose of establishing that Trevino had knowledge of his financial condition, i.e., that his conduct was not simply the result of a mistake regarding the state of his banking account. Trevino's argument that the prejudicial nature of this evidence outweighed its probative value in establishing that element of the charged crime essentially boils down to a contention that the uncharged misconduct was so similar to that underlying the instant charge that there was a degree of probability that the jury would likely convict him based upon his prior conduct. Such a probability is inherent in this type of evidence, of course, which is why we require the district court to carefully balance certain factors when weighing the probative value of the evidence against its prejudicial aspects, *Williams,* at ¶ 13, 99 P.3d at 440–42, and to give the jury a cautionary instruction that the evidence is to be considered only for the proper purpose for which it was admitted if requested by the defense.[3] We have upheld the admission of evidence of uncharged inci-

dents of writing bad checks where the defendant was charged with obtaining property by false pretenses under W.R.E. 404(b) to establish intent, plan, or scheme. *Sanville v. State,* 593 P.2d 1340, 1345 (Wyo.1979). Trevino cites no authority to persuade us that the admission of this evidence constituted an abuse of discretion. We see no basis for finding that the district court's balancing of the probative value versus the prejudicial potential of the evidence was an abuse of discretion in light of the purpose for which it was admitted.

## CONCLUSION

[¶ 19] Finding that there is sufficient evidence in the record to support the conviction for obtaining property by false pretenses and that there was no abuse of discretion in the district court's admission of certain evidence pursuant to W.R.E. 404(b), we affirm Trevino's conviction and sentence.

---

3. Citing tactical considerations, Trevino did not request a limiting instruction.