2004 WY 53

**The STATE of Wyoming, Petitioner,**

v.

**Carol Marie WILLIAMS, Respondent.**

No. 02–96.

Supreme Court of Wyoming.

May 13, 2004.

Representing Petitioner: Hoke MacMillan, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Matthew F. Redle, Special Assistant Attorney General and County and Prosecuting Attorney for Sheridan County. Argument by Mr. Redle.

Representing Respondent: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] In this case, this Court granted the State's petition for writ of review to determine the narrow question whether the district court transgressed the holding in *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (*per curiam*), when the district court granted the defendant's motion to suppress incriminating evidence seized by law enforcement officers during a lawful traffic stop which led to charges that the defendant, the driver of the stopped vehicle, possessed three or more grams of methamphetamine and a quantity of marijuana in violation of state law.

[¶ 2] We hold that the district court erred as a matter of law in granting the defendant's motion to suppress on the mistaken understanding that the automobile exception to the search warrant requirement has a separate exigency requirement. In *Dyson*, the United States Supreme Court reaffirmed its previous holdings [1] that

the automobile exception [to the search warrant requirement] does not have a separate exigency requirement:

"If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more."

*Dyson,* 527 U.S. at 467, 119 S.Ct. at 2014.

[¶ 3] In its petition for writ of review, the State presented these questions:

1. Was there probable cause sufficient to justify the trooper's search of the automobile drive by [Williams]?

2. Prior to conducting a search of the interior of the vehicle and any closed containers, was the officer obligated to obtain a search warrant?

In its appellate brief, the State has reiterated these issues and added one more:

Did [Williams] fail to adequately preserve the issue of independent state constitutional analysis?

While Williams in her appellate brief has phrased the issues somewhat differently than the State, the issues are essentially the same as the State's.[2]

## FACTS

[¶ 4] Around 5:00 p.m., Wednesday, September 26, 2001, Wyoming State Trooper Kelly Broad and his drug detection dog, Joey, were patrolling Interstate Highway 90 south of Sheridan in Sheridan County, Wyoming. Trooper Broad and his dog, Joey, had worked together as a canine unit since August of 2000. They had received training in drug detection, trained together on a near daily basis, and had been certified by the California Narcotics Canine Association. The dog, Joey, had been trained to identify marijuana, heroin, methamphetamine, and cocaine. Trooper Broad regularly performs "proofing" exercises that are used to reasonably assure that his dog alerts only to the designated controlled substances. There had been no "proofing" issues with his dog around the time in question in this case. As Trooper Broad traveled eastbound on the highway, he saw a 1988 maroon-colored Pontiac Bonneville without a front license plate traveling westbound on the highway. When the Pontiac passed Trooper Broad, he saw that it displayed a Wyoming license plate on the rear bumper. Wyoming law requires vehicles registered in Wyoming to display front and rear license plates. Wyo. Stat. Ann. § 31–2–205(a) (LexisNexis 2003). Trooper Broad crossed the highway median and stopped the Pontiac.

[¶ 5] In the Pontiac, Trooper Broad saw a female driver, a male passenger, and a large dog. Trooper Broad asked the driver of the Pontiac for her driver's license, registration, and proof of insurance. The driver handed Trooper Broad a South Dakota identification card, which identified her to be Carol

---

**1.** *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (*per curiam*); *United States v. Ross,* 456 U.S. 798, 809, 102 S.Ct. 2157, 2164–65, 72 L.Ed.2d 572 (1982).

**2.** 1. Whether probable cause existed to justify searching [Williams'] car after a citation had been issued?

　2. Whether the illegal search violated the Wyoming State Constitution?

Williams, proof of insurance, and a vehicle registration indicating that the owner of the Pontiac was one Dusty Linder of Gillette. Williams stated that she had a valid South Dakota driver's license but did not have it with her. At Trooper Broad's request, Williams stepped out of the Pontiac and to the rear of it by Trooper Broad's patrol car. Trooper Broad returned to his patrol car and requested his dispatch to run a driver's license check and criminal history check on Williams. Trooper Broad then returned to Williams and asked her questions about the Pontiac, who owned it, why she was driving it, and her travel itinerary. During this conversation, Williams was rapidly smoking a cigarette and appeared very nervous.

[¶ 6] It is unclear from the record when during this stop Trooper Broad received information from his dispatch that Williams had a valid South Dakota driver's license and the Pontiac registration and proof of insurance checked out; however, he did receive such information. Trooper Broad then issued Williams a warning citation for the license plate display violation. Next, Trooper Broad told Williams to wait by the patrol car while he checked the Pontiac's vehicle identification number inside the Pontiac. As Trooper Broad checked the Pontiac's vehicle identification number, he conversed with Williams' passenger who was in the vehicle. Trooper Broad questioned the passenger about the passenger's and Williams' travel itinerary and purpose of their trip.

[¶ 7] It is unclear from the record when during this stop Trooper Broad ran a driver's license check and a criminal history check on Williams' passenger, but Trooper Broad testified that he had done so. Because Trooper Broad detected inconsistencies between Williams' answers and her passenger's answers to his questions, Trooper Broad left the passenger in the Pontiac and returned to Williams who was still standing at the rear of the Pontiac and by the patrol car. Trooper Broad questioned Williams about the inconsistencies he had detected. According to Trooper Broad, Williams' answers to his questions did not clarify the detected inconsistencies, and Williams appeared to become more nervous. During this questioning,

Trooper Broad, who was carrying a portable radio, received a call from his dispatch informing him that Williams had some type of drug violation in her criminal history. During Trooper Broad's continuing questioning, Williams, who had finished smoking one cigarette, asked Trooper Broad if she could smoke another one; Trooper Broad told her she could not. According to Trooper Broad, Williams still appeared nervous, walked from the rear of the Pontiac toward the driver's side door of the Pontiac, opened the driver's side door and grabbed a cigarette. Trooper Broad told her several times to put the cigarette back inside the Pontiac, Williams finally dropped the cigarette, and walked back to the rear of the Pontiac.

[¶ 8] At this time, Trooper Broad asked Williams if she had anything illegal in the Pontiac, and she answered she did not. Trooper Broad then asked her if she had any marijuana, heroin, cocaine, and methamphetamine in the Pontiac, and she answered she did not. Trooper Broad asked her for her consent to search the Pontiac, she asked him why, he told her he felt there was something illegal in the vehicle, and he asked her again if there was, and she answered no. Trooper Broad again asked if he could search the vehicle, and she answered no. Trooper Broad then directed Williams to remove the large dog from the Pontiac and asked the passenger to step out of the Pontiac. The passenger identified as his two bags in the back seat, and Trooper Broad removed them from the vehicle.

[¶ 9] Next, Trooper Broad retrieved the drug detection dog, Joey, from the patrol car in order to perform an exterior sniff of the Pontiac and gave the command to find drugs. The dog walked to the rear passenger door on the driver's side of the Pontiac and alerted. Trooper Broad opened that door and placed the dog inside the vehicle. The dog alerted on a small pillow on the floor of the rear seat area. The dog also alerted on a marijuana cigarette in the rear seat. Trooper Broad returned his dog to the patrol car, returned to the Pontiac, and opened the small pillow. Inside the pillow Trooper Broad found a smaller, purple-colored, velvet-textured bag, a pipe, a small baggy of

marijuana, and a small digital scale in a box. Inside the small, purple-colored, velvet-textured bag, Trooper Broad found plastic baby bottle liners, one of which contained a white powdery substance, and a small glass vial also containing a white powdery substance.

[¶ 10] Trooper Broad arrested Williams and notified other law enforcement personnel to come to his location to process the Pontiac and other evidence. In addition to the evidence found by Trooper Broad, law enforcement personnel found inside the Pontiac's glove box an envelope and leather bag, each containing several hundred dollars in cash.

[¶ 11] The State charged Williams with felony possession of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(c)(iii)(C), and misdemeanor possession of marijuana in violation of Wyo. Stat. Ann. § 35–7–1031(a)(c)(i). After Williams' preliminary hearing, she was bound over for arraignment; she entered pleas of not guilty. Through counsel, Williams then filed a motion to suppress the incriminating evidence seized during Trooper Broad's traffic stop. At the evidentiary hearing on Williams' suppression motion, the only witness who testified was Trooper Broad. Following the evidentiary hearing, the district court granted Williams' motion and entered its order suppressing the evidence seized as a result of Trooper Broad's traffic stop. The State filed its petition for a writ of review, which this Court granted.

## DISCUSSION

### Standard of Review

[¶ 12] When reviewing a district court's ruling on a motion to suppress, this Court does not disturb findings on factual issues made by the district court unless they are clearly erroneous. *State v. Evans*, 944 P.2d 1120, 1124 (Wyo.1997) (citing *Bravo v. State*, 897 P.2d 1303, 1305 (Wyo.1995)). At the suppression hearing, the district court has the opportunity to assess the credibility of the witnesses and the weight to be given the evidence and to make the necessary inferences, deductions and conclusions; therefore, we view the evidence in the light most favorable to the district court's determina-

tion. *Evans*, 944 P.2d at 1124 (citing *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994)). On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence. *Neilson v. State*, 599 P.2d 1326, 1330 (Wyo.1979). The issue of law, whether an unreasonable search or seizure has occurred in violation of constitutional rights, is reviewed de novo. *McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999). A district court judgment may be affirmed on any proper legal grounds supported by the record. *Robinson v. State*, 11 P.3d 361, 367 (Wyo.2000); *see also Chapman v. State*, 638 P.2d 1280, 1286 n. 7 (Wyo.1982); *Jones v. State*, 602 P.2d 378, 382 (Wyo.1979).

### The Parties' Contentions in the District Court

[¶ 13] Williams' motion to suppress contained two paragraphs pertinent to our review:

17) Although Officer Broad had a valid reason to stop [Williams] for failing to have a front license plate, the resulting search of the vehicle was unreasonable and illegal pursuant to U.S. Const. Fourth Amendment and Wyo. Const. Art. 1 § 4.

18) Officer Broad did not have a search warrant, the search was not the result of a valid arrest or arrest warrant, [Williams] did not consent to the search and Officer Broad did not have probable cause to search the vehicle, therefore the search was illegal and in violation of the U.S. Const. Fourth Amendment and Wyo. Const. Art. 1 § 4.

[¶ 14] In response to these assertions, the State agreed that Trooper Broad's initial traffic stop of Williams was lawful because of the license plate display violation; Trooper Broad did not have a search warrant; Trooper Broad's search was not the result of a valid arrest or arrest warrant; and Williams did not consent to the search. The State disagreed, however, that Trooper Broad did not have probable cause to search the Pontiac without a search warrant and that the resulting search was unreasonable and illegal under the Fourth Amendment of the United

States Constitution and Article 1, Section 4 of the Wyoming Constitution. During the State's closing argument, State's counsel and the district court judge discussed federal case law concerning the automobile exception to the search warrant requirement. State's counsel maintained that probable cause and a vehicle are the two things that must be present before a law enforcement officer can search a vehicle without a warrant. The district court judge expressed disagreement with that statement, remarking, "Well, actually, probable cause and exigency." In reply, State's counsel, said, "No, there is no requirement of exigency."

[¶ 15] After State's counsel concluded his closing argument, Williams' counsel presented a brief closing argument. In full, it was as follows:

> Well, Your Honor, we think our motion should be granted. [The prosecutor] refers to the Fourth Amendment. This is also under the Wyoming Constitution, as well.
>
> We'd just note to the Court there is a case out of Colorado, *People of Colorado versus H. Haley.* It's an unpublished opinion 41 P.3d 666, 2001 WL 1491444. Deals with an almost exact same situation as we have here. The Supreme Court of Colorado upheld the motion to suppress and denied the State of Colorado's appeal trying to overturn the trial court's granting. In fact, the Supreme Court of Colorado has consistently held that the actual sniffing by the dog of the exterior of the vehicle constitutes a search.
>
> Where does this end? You get pulled over for a simple traffic citation and you've got a fast food bag in your car and a cell phone and the next think you know, you've got a drug-sniffing dog all around your car. There was no consent given in this case. We think this evidence should be suppressed, Your Honor.

3. A divided Colorado Supreme Court held that, under Article 2, Section 7 of the Colorado Constitution, "a dog sniff search of a person's automobile in connection with a traffic stop that is prolonged beyond its purpose to conduct a drug investigation intrudes upon a reasonable expecta-

■ [¶ 16] Williams' closing argument is notable for several reasons. First, there was no argument of federal case law on the automobile exception to the search warrant requirement. Second, although Williams' counsel stated "[t]his is also under the Wyoming Constitution, as well," there was no cogent argument of an independent state constitutional analysis. Counsel's mere uttering the words "Wyoming Constitution" was no analysis at all. Counsel failed to preserve the issue for purposes of appellate review. *Bailey v. State,* 12 P.3d 173, 177–78 (Wyo.2000); *Doles v. State,* 994 P.2d 315, 319–20 (Wyo. 1999); *Gronski v. State,* 910 P.2d 561, 565–66 (Wyo.1996); *Wilson,* 874 P.2d at 219. Third, Williams' counsel did not challenge the reliability of the drug detection dog's alerts or training. Fourth, Williams' counsel did not raise issues about the duration of the traffic stop and the existence or non-existence of reasonable articulable suspicion. Finally, Williams' counsel referred to *People v. Haley,* 41 P.3d 666 (Colo.2001), decided solely on grounds of the Colorado Constitution, and claimed it dealt with "an almost exact same situation as we have here," but did not state the significant facts, issues, complete holding, or the reasons supporting the holding in that case; and counsel did not analyze the facts in Williams' case in light of the significant facts and holding in the Colorado case.[3]

### The District Court's Ruling

[¶ 17] Having heard counsels' closing arguments, the district court ruled orally from the bench. The pertinent portions of that oral ruling were:

> 1. "[S]earches without a warrant are per se unreasonable unless the officer can demonstrate the existence of facts showing probable cause to believe instrumentalities of crime exist and that circumstances justify one of the many exceptions to the rule requiring a search warrant."

tion of privacy and constitutes a search and seizure requiring reasonable suspicion of criminal activity." 41 P.3d at 672. The court agreed with the trial court that the police acted without reasonable suspicion. *Id.* at 677.

2. "[T]he court is going to find that there was no probable cause to search, number one."

3. "I will make a finding that there was a lawful stop of the vehicle in this case."

4. "Because there was no probable cause to suspect contraband, there was no circumstance justifying a warrantless search . . . ."

5. "With respect to this dog sniff, . . . [e]ven if a dog sniff is merely probable cause development and not a search, this court holds that the officer still should have gotten a warrant to look inside the pillow case and the car.

"And the reason for that—well, best example would—might be *United States v. Chadwick*, because that's a dog case. . . . .

"In this case the court finds that the vehicle was not free to leave, there was no danger, therefore, of the auto being removed; and the officer could have sought a search warrant in this case."

6. "Frankly, I'm not ruling on the dog sniff. I'm not saying that it was a search or not a search, but I'm saying that even if it was . . . not a search, the officer still would have needed a warrant to look inside the pillow case . . . and the car."

[¶ 18] Twenty-three days later, the district court judge entered an "Order Suppressing Evidence" which recited in pertinent part:

(1) Trooper Broad conducted a lawful traffic stop;

(2) There was no probable cause to search the vehicle prior to the officer's dog being led to the car and "alerting";

(3) No exigent circumstance existed justifying a warrantless search of the vehicle;

(4) This Court is not ruling on whether a "dog sniff" is a search. Assuming the dog sniff is not a search, the "dog alert" may have constituted probable cause to believe contraband existed on the scene. However, the officer was still required to articulate the dog alert suspicions in an affidavit in support of a request for a search warrant. The officer needed a warrant to search the car and pillow case inside the car;

(5) The vehicle was not free to leave, there was no danger of the auto being removed and the officer should have sought a search warrant in this case[.]

## Analysis

[¶ 19] From our careful review of this record, including Williams' motion to suppress, the State's response to that motion, counsels' arguments at the evidentiary hearing, the district court's oral and written rulings, and the issues identified in the State's petition for the writ of review and in the parties' statements of the issues in their briefing to this Court, we see clearly that several legal issues are not before us in this case. We do not have before us any legal issue concerning Trooper Broad's initial traffic stop for a license plate display violation; the duration of Trooper Broad's detention of Williams, and the existence or non-existence of reasonable articulable suspicion supporting such detention; the reliability of the drug detection dog's training and alerts on Williams' vehicle; and whether the drug detection dog's sniff of the exterior of Williams' vehicle constitutes a search for purposes of federal or state search and seizure law. The only legal issue we do have before us is captured in the following paragraph's of the district court's order suppressing evidence:

(3) No exigent circumstance existed justifying a warrantless search of the vehicle;

(4) This Court is not ruling on whether a "dog sniff" is a search. Assuming the dog sniff is not a search, the "dog alert" may have constituted probable cause to believe contraband existed on the scene. However, the officer was still required to articulate the dog alert suspicions in an affidavit in support of a request for a search warrant. The officer needed a warrant to search the car and pillow case inside the car;

(5) The vehicle was not free to leave, there was no danger of the auto being removed and the officer should have sought a search warrant in this case[.]

[¶ 20] The State has informed us, and our independent research has confirmed, that a significant, if not overwhelming, number of courts have concluded that a trained and

reliable drug detection dog's alert during an exterior sniff of an automobile provides probable cause to search the automobile when the automobile is parked or stopped in a place where the drug detection dog's law enforcement officer has a right to be. *See, e.g., United States v. Jones,* 275 F.3d 648, 653–54 (7th Cir.2001); *United States v. Sundby,* 186 F.3d 873, 876 (8th Cir.1999); *United States v. Klinginsmith,* 25 F.3d 1507, 1510 (10th Cir. 1994); *State v. Bergmann,* 633 N.W.2d 328, 334 (Iowa 2001); *State v. England,* 19 S.W.3d 762, 764, 769 (Tenn.2000); *State v. Tucker,* 132 Idaho 841, 979 P.2d 1199, 1201 (Id.1999); and *Kenner v. State,* 703 N.E.2d 1122, 1125 (Ind.App.1999). *See also,* 1 Wayne R. La-Fave, *Search and Seizure* § 2.2(f), at 450 (3d ed.1996). The district court in the case before us allowed that the drug detection dog's alert "may have constituted probable cause to believe contraband existed on the scene." Even with that allowance, however, the district court ruled that Trooper Broad "needed a warrant to search the car and the pillow case inside the car."

[¶ 21] We must disagree in light of *Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (*per curiam*). In that case, sheriff's deputies, acting on a tip from a reliable confidential informant that Dyson would be driving a certain automobile containing a large quantity of cocaine, stopped and searched the vehicle, finding twenty-three grams of crack cocaine in a duffel bag in the trunk. *Id.* at 465–66, 119 S.Ct. at 2013. The trial court denied Dyson's motion to suppress the evidence, and Dyson was convicted of conspiracy to possess cocaine with intent to distribute. *Id.* at 466, 119 S.Ct. at 2013. On appeal to the Maryland Court of Special Appeals, Dyson argued that the trial court had erroneously denied his motion to suppress the cocaine on the alternative grounds that the police lacked probable cause, or that even if there was probable cause, the warrantless search violated the Fourth Amendment because there was sufficient time after the informant's tip to obtain a warrant. *Id.* The state appellate court reversed, holding that in order for the automobile exception to the warrant requirement to apply, there must not only be probable cause to believe that evidence of a crime

is contained in the automobile, but also a separate finding of exigency precluding the police from obtaining a warrant. *Id.* Although the state appellate court concluded that abundant probable cause existed, it held the sheriff's deputies search violated the Fourth Amendment because there was no exigency that prevented or even made it significantly difficult for the sheriff's deputies to obtain a search warrant. *Id.* The United States Supreme Court granted certiorari and reversed the state appellate court's decision. *Id.* We quote from the Court's opinion:

The Fourth Amendment generally requires police to secure a warrant before conducting a search. *California v. Carney,* 471 U.S. 386, 390–391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). As we recognized nearly 75 years ago in *Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925), there is an exception to this requirement for searches of vehicles. And under our established precedent, the "automobile exception" has no separate exigency requirement. We made this clear in *United States v. Ross,* 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), when we said that in cases where there was probable cause to search a vehicle "a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained.*" (Emphasis added.) In a case with virtually identical facts to this one (even down to the bag of cocaine in the trunk of the car), *Pennsylvania v. Labron,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (*per curiam*), we repeated that the automobile exception does not have a separate exigency requirement: "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more." *Id.* at 940, 116 S.Ct. 2485.

In this case, the Court of Special Appeals found that there was "abundant probable cause" that the car contained contraband. This finding alone satisfies the automobile exception to the Fourth Amendment's warrant requirement, a con-

clusion correctly reached by the trial court when it denied respondent's motion to suppress. The holding of the Court of Special Appeals that the "automobile exception" requires a separate finding of exigency in addition to a finding of probable cause is squarely contrary to our holdings in *Ross* and *Labron*. We therefore grant the petition for writ of certiorari and reverse the judgment of the Court of Special Appeals.

*Dyson*, 527 U.S. at 466–67, 119 S.Ct. at 2014. *See also, Borgwardt v. State*, 946 P.2d 805, 807 (Wyo.1997) (police may search an automobile without having a warrant when they have probable cause to believe that the automobile contains evidence of a crime or contraband); *Gronski*, 910 P.2d at 564–65 (exigency not required).

[¶ 22] In Williams' case, probable cause existed (Joey's alert on the Pontiac's exterior) that the Pontiac contained contraband. This finding alone satisfies the automobile exception to the Fourth Amendment's warrant requirement.[4] The order of the district court that the automobile exception requires a separate finding of exigency in addition to a finding of probable cause "is squarely contrary" to the United States Supreme Court's holdings in *Dyson, Ross*, and *Labron* and to our holdings in *Borgwardt* and *Gronski*. We therefore reverse the order of the district court and remand for further proceedings not inconsistent with this decision.

---

4.  *Ross* also teaches that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of

the search." *Ross*, 456 U.S. at 825, 102 S.Ct. at 2173. *And see Wyoming v. Houghton*, 526 U.S. 295, 301–02, 119 S.Ct. 1297, 1301, 143 L.Ed.2d 408 (1999).