2005 WY 25

**Brian K. HOLLOMAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 03–160.

Supreme Court of Wyoming.

Feb. 28, 2005.

Rehearing Denied March 22, 2005.

Representing Appellant: Kenneth Koski, Wyoming Public Defender; Donna Domonkos, Appellate Counsel; Diane E. Courselle, Director, Defender Aid Program; and Jeff Stanbury, Antoine Tissot, and Sean C. Chambers, Student Interns. Argument by Mr. Chambers.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General. Argument by Ms. Tibbetts.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and STEBNER, D.J., retired.

HILL, Chief Justice.

[¶ 1] Appellant, Brian K. Holloman (Holloman), was convicted of murder in the first degree and sentenced to life in prison. He claims that the trial court committed reversible error by excluding from the evidence the criminal records of both the victim of his crime, as well as that of a third person present at the scene of the crime. Holloman also contends that the trial court committed reversible error in allowing prejudicial character evidence to be called to the attention of the jury. We will affirm.

## ISSUES

[¶ 2] Holloman advances these issues:

1. Did the trial court commit reversible error by improperly excluding the criminal records of both Doug Johnson and Herman Thunder Hawk[?] Did the exclusion of the criminal records violate Mr. Holloman's constitutional right to present a defense of self-defense?

2. In violation of W.R.E. 404(b) and Mr. Holloman's due process rights, did the trial court erroneously permit the State to use inadmissible character evidence to portray Brian Holloman as a liar, a spiteful person, a vigilante and, therefore, a murderer?

The State rephrases the issues only slightly:

I. Did the district court commit reversible error by excluding evidence concerning the victim's and Herman Thunder Hawk's prior criminal conduct?

II. Did the district court abuse its discretion in not preventing the State from introducing allegedly inadmissible W.R.E. 404(b) evidence?

In his reply brief, Holloman addresses these additional issues spawned by the State's brief:

1. Thunder Hawk was not a victim of the crime for which Mr. Holloman was on trial, however his criminal record should be admissible under W.R.E. 404(a)(2) and alternatively if Thunder Hawk's testimony is found inadmissible under 404(a)(2), Mr. Holloman's right to present a defense supercedes a rule of evidence (responding to new argument in brief of appellee).

2. The trial court did not rule that the proof of Thunder Hawk and Johnson's criminal history was insufficient.

3. In addressing the harmlessness of excluding the criminal records of Thunder Hawk and Johnson, the [State] ignores the testimony of Thunder Hawk and the testimony of several witnesses to Johnson's death.

4. Mr. Holloman's pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b) operates as a timely objection under this Court's decision in *Howard v. State* [2002 WY 40, 42 P.3d 483 (Wyo.2002) ].

## FACTS

[¶ 3] Holloman was previously convicted of this same crime, and we reversed that conviction on the basis that the trial court failed to give requested self-defense instructions. *Holloman v. State,* 2002 WY 117, 51 P.3d 214 (Wyo.2002) (*Holloman I* ). Although there were some slight variations in the evidence at the second trial, we refer our readers to the statement of the facts contained in our earlier opinion, and we set out below only those facts most pertinent to this appeal. *Holloman I,* at ¶¶ 4–14.

[¶ 4] The State's theory of the case, in essence, was that Holloman, the victim Douglas Johnson, and a third man, Herman Thunder Hawk, were all in a hotel room on the third story of the Idelman Hotel in down-

town Cheyenne, on July 25, 1999. Thunder Hawk was the tenant in the residential hotel, Johnson was a homeless individual who visited Thunder Hawk regularly over the weeks preceding the crime, and Holloman was a transient who had come to Cheyenne on July 24, 1999, on a freight train. The three men had been drinking heavily that day, and both Thunder Hawk and Holloman were self-admitted alcoholics who drank significant quantities of alcohol on a daily basis. The evidence was conclusive that all three men were very intoxicated (Johnson .36 BAC, Holloman .33 BAC, and Thunder Hawk .27 BAC).

[¶ 5] The crime occurred during daylight hours and the streets of Cheyenne were busy because the annual Frontier Days celebration was in progress. The State's evidence demonstrated that, although there was no apparent motive for the crime, Holloman first dangled the victim of his crime from a third-story hotel window for several minutes and then either dropped him, or forcibly pushed him, out of the window. Johnson fell to his death on the sidewalk below. Many witnesses were situated on the street below, or immediately across the street from the hotel, and they testified that they saw Holloman do this, and that he frustrated the efforts of Thunder Hawk to come to Johnson's rescue.[1]

[¶ 6] Thunder Hawk testified that he was in the bathroom of the hotel room and heard no commotion in the living area of the room. However, when he came out into that area, he found Holloman attempting to push Johnson out a window. Thunder Hawk related that he attempted to assist Johnson to get back inside the room but that Holloman

punched him and prevented him from helping Johnson. Thunder Hawk's testimony was very clear that Holloman pushed Johnson out the window.

[¶ 7] Holloman, on the other hand, contended that when he attempted to turn down blaringly loud music being played on a radio/cassette recorder, he was punched in the side of his face ("blindsided") by someone he could not see. Holloman had a large wound on the side of his face that he had suffered in an alley fight the day before,[2] and the blow to that area of his face was excruciatingly painful causing him to become disoriented. The wound was inflicted by a broken beer bottle and required many stitches to suture it shut. Photographic evidence demonstrated the size and severity of the injury as it appeared shortly after Holloman was arrested for this crime. He did not know for sure who delivered the punch, although in his testimony he agreed that only Thunder Hawk and Johnson were in the hotel room with him. His theory of the case was that Johnson's death was a tragic accident and that Johnson simply fell out the open window in the tumult that followed the punch to Holloman's face.

## DISCUSSION

[¶ 8] Holloman challenges the district court's rulings on the admission or exclusion of evidence in two respects. First, he contends that the district court erred in making a liminal ruling that Holloman would not be permitted to introduce evidence concerning the prior criminal records of both Johnson and Thunder Hawk under W.R.E. 404(a)(2).[3]

---

1. In his brief, Holloman argues in his recitation of the facts that these witnesses' stories confused rather than clarified the situation. In *Holloman I*, we held that Holloman established a theory of self-defense that he was entitled to have presented to the jury as his theory of the case. However, we take note that a jury could well have concluded that his story was, at best, implausible given the volume of eyewitness accounts of what happened that day. It is readily apparent that the variations from witness to witness reflected that each was in a slightly different location and, thus, their respective abilities to see and hear all that went on varied accordingly. In our prior opinion, we did describe the testimony of those witnesses as being in conflict. However, wheth-

er they are characterized as conflicting or merely varying in the details, that circumstance does not serve to advance Holloman's contention that the prior criminal offense records of Johnson and Thunder Hawk should be admissible.

2. Holloman concedes that Johnson took no part in the July 24, 1999, assault upon him.

3. W.R.E. 404 (emphasis added) provides:

   (a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

Second, Holloman contends that the district court erred in allowing the admission of evidence of prior bad acts committed by Holloman.

## Admissibility of Victim's and Thunder Hawk's Prior Criminal Records

[¶ 9] Holloman contends that by prohibiting him from making any reference to the past crimes committed by Johnson and Thunder Hawk, he was deprived of his constitutional right to present a defense. "Mr. Holloman sought to introduce the criminal records of Mr. Johnson and Thunder Hawk to show that both had a propensity towards violence. This would serve as evidence that one or both of these men was the first aggressor and that Mr. Holloman responded in self-defense. By not being allowed to present such evidence, Mr. Holloman was prevented from effectively demonstrating to the jury that he acted in self defense."

[¶ 10] Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria. It also means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the trial court's determination. The burden is on the defendant to establish such abuse. *Wilde v. State*, 2003 WY 93, ¶ 13, 74 P.3d 699, 707, ¶ 13 (Wyo.2003); and *see Edwards v. State*, 973 P.2d 41, 45–47 (Wyo.1999).

[¶ 11] Holloman asserts that we must evaluate this issue as a violation of due process of law. We are convinced that the standard of review recited above is the appropriate standard in these circumstances and decline to address the "constitutional" argument propounded in Holloman's brief.

[¶ 12] We have recognized that there are circumstances where the character of the victim of a crime may be relevant, especially in those instances where the defendant contends that an assault or a homicide was justified because the victim was the first aggressor and was known to be of a violent character. Such evidence is not offered for the sake of proving the victim's bad character, but rather to explain defendant's motive

(1) *Character of Accused.*—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) ***Character of Victim.*—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;**

(3) *Character of Witness.*—**Evidence of the character of a witness, as provided in Rules 607, 608, and 609.**

W.R.E. 609 provides in pertinent part:

(a) *General rule.*—For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

(b) *Time limit.*—Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

and what he might have reasonably apprehended as to the danger he faced. *See, e.g., Edwards,* 973 P.2d at 45–47; *Braley v. State,* 741 P.2d 1061, 1067–69 (Wyo.1987); *State v. Velsir,* 61 Wyo. 476, 159 P.2d 371, 373–74 (1945) (principle recognized, but exclusion of such evidence not error where offer of proof inadequate); and *Mortimore v. State,* 24 Wyo. 452, 474–75, 161 P. 766, 772 (Wyo.1916). Although we will not discuss them in detail here, the authorities we will set out below explain that character evidence relating to the victim of a homicide, as well as other third parties present, may be admissible if the offered evidence is competent, relevant, material, foundation is adequate, and remoteness of the evidence does not counsel against its admission.

■ [¶ 13] We decline to apply that general evidentiary principle here because Holloman's offer of proof with regard to all such evidence was inadequate.[4] The only proof offered was a laundry list of prior offenses for both men, without regard to such matters as the adequacy of foundation, relevancy, competency, materiality, or remoteness of the evidence.

[¶ 14] With respect to Johnson, a notice of intent to introduce his prior violent criminal history was submitted for the trial court's consideration. It contained 13 paragraphs. Seven of those paragraphs listed arrests and charges that had either been dismissed, or the disposition of the crime was unknown. No details of the exact nature of any of those crimes was submitted for the district court's consideration (although they were categorized, e.g., as assault, robbery, and fighting). Two items related to what was apparently one event that occurred on April 13, 1989, in New Mexico. The crimes were aggravated assault and robbery while armed with a

deadly weapon, and Johnson was convicted of both crimes. No details about those incidents were provided to the district court and the only "proof" proposed by the defense was to offer certified copies of judgments. The list also included a conviction for obstructing a police officer in Montana in 1996, but again no additional information was offered to show the relevancy of that offense. Johnson was convicted in Oregon, in 1980, of carrying a concealed weapon, but once again no details were made available for the district court's consideration. The twelfth item on the list was an assertion (according to Holloman, without more) that Johnson was a member of the Freight Train Riders of America, an organization of transient train riders reputed to be violent people. The thirteenth paragraph suggested that more items might be added to the list later, but none were. Holloman did not propose to have any witness testify to Johnson's reputation for violence, or as to specific acts of which the witness had personal knowledge. *See* W.R.E. 405.[5]

[¶ 15] With respect to Thunder Hawk, Holloman offered a much shorter list that included 1975 convictions for robbery, assault, and failure to appear in California, fraudulent use of a credit card in 1978, third degree sexual assault in 1990, and providing false information in 1993. Holloman did not propose to have any witness testify to Thunder Hawk's reputation for violence or for truthfulness.

[¶ 16] We need not discuss these asserted errors more dispositively because Holloman's offer of proof, as well as his proposed method of proof, simply did not require the district court to take any other action than that which it did take. The district court tentatively granted the State's liminal motion to

---

4. Holloman contends that the trial court did not reject the offered evidence on this specific basis. While the record is not crystal clear in this regard, we may, nonetheless, uphold the general ruling of the court below if supported by any reasonable view of the evidence. *State v. Williams,* 2004 WY 53, ¶ 12, 90 P.3d 85, ¶ 12 (Wyo.2004).

5. W.R.E. 405 provides:
    (a) *Reputation or opinion.*—In all cases in which evidence of character or a trait of char-

acter of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
    (b) *Specific instances of conduct.*—In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, or is in issue under Rule 404(a)(2), proof may also be made of specific instances of his conduct.

prevent that evidence from coming before the jury, but did not prohibit Holloman from raising the issue again if the district court's legitimate concerns were assuaged by further development of the proposed proof.[6] Holloman was not denied the opportunity to "develop" this evidence; he simply failed to do so. *See generally Person v. State,* 2004 WY 149, ¶¶ 19–21, 100 P.3d 1270, ¶¶ 19–21 (Wyo.2004). Although our resolution of this issue does not call upon us to employ it here, for a more complete and scholarly discussion of the more subtle nuances of F.R.E. 404(a)(2) (and thus W.R.E. 404(a)(2) as well), *see* 1 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 103 (Character of Victim: Initial Proof and Rebuttal), at 566–73, § 104 (Character of Witness), at 573–74, and § 105 (Character as Element of Charge or Defense (Insanity and Other Issues)), at 574–81 (1994 2nd ed. and Supp. 2004); and H.H. Henry, Annotation, *Admissibility of Evidence as to Other's Character or Reputation for Turbulence on Question of Self-Defense by One Charged with Assault or Homicide,* 1 A.L.R.3d 571 (1965 and Supp. 2004) (With respect to Thunder Hawk see § 9, "Evidence as to character of third persons.").

[¶ 17] We hold that the district court's liminal ruling that the offered evidence was not admissible was not erroneous in these circumstances.

## W.R.E. 404(b) Evidence

[¶ 18] Holloman filed a demand for notice of the State's intent to introduce W.R.E. 404(b) evidence. The State gave such a notice and indicated it would offer these items of evidence that were in the nature of 404(b) evidence: (1) That Holloman was involved in a fight over a dog that resulted in the injury

to his face on July 24, 1999; (2) that Holloman used an alias in the course of his contact with police and health care personnel when they responded to his call for assistance after the July 24, 1999, injury; and (3) that Holloman indicated he would seek retribution against the person who injured him on July 24, 1999. It is apparent from the record that no hearing was held on this matter as required by our governing precedents.

[¶ 19] Holloman first asserts that the prosecutor erred by including in his opening argument an item of 404(b) evidence that was not included in the State's notice. That incident involved Holloman punching out a third person, for no apparent reason, just hours before the killing of Johnson. Defense counsel objected, but the trial court overruled the objection. At Holloman's previous trial, the district court determined that that evidence was not admissible. Of course, we must presume that the prosecutor was aware of that ruling and acted in disregard of it. Nonetheless, the trial court eventually held that the evidence was not admissible and the jury did not hear anything further about it. The jury was instructed that the arguments of counsel are not evidence. Although the prosecutor clearly acted improperly, and seemingly deliberately, after considering the totality of the circumstances, as well as the overwhelming evidence of Holloman's guilt, we deem the error harmless. W.R.A.P. 9.04.

[¶ 20] Holloman contends that the district court erred in admitting other evidence in violation of W.R.E. 404(b).[7] Much of this evidence related to Holloman's conduct on the day preceding the murder, when he was attacked by a third party who was a stranger to the events of July 25, 1999. We recently set out a comprehensive statement of the

---

**6.** The record suggests there may have been a tactical reason for not further pursuing the admission of this evidence. Pursuant to a motion to exclude W.R.E. 404(b) evidence made by the defense, the district court had tentatively excluded evidence of Holloman's prior manslaughter conviction. A part of the discussion on those matters included the possibility that the admission of Johnson's and Thunder Hawk's reputations for violent conduct may have served to open the door for the admission of Holloman's prior bad acts as well.

**7.** W.R.E. 404(b) states:

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

standard of review applicable when an issue such as this is raised. We will not iterate that standard in detail here. *Williams v. State,* 2004 WY 117, ¶¶ 8–13, 99 P.3d 432, ¶¶ 8–13 (Wyo.2004).

[¶ 21] Holloman asserts the prosecution made improper use of W.R.E. 404(b) evidence in several respects. First, he contends that the prosecutor employed Holloman's use of an alias in a prejudicial manner that impugned his character and amounted to bad acts evidence. We agree that a portion of the prosecutor's use of that evidence, as well as portions of his argument in that regard, were erroneous because it is evident that it was used (both in argument and in the State's case-in-chief) for the sole purpose of demonstrating bad character and a criminal mindset. *See United States v. Williams,* 739 F.2d 297, 299–300 (7th Cir.1984); and *Commonwealth v. Martin,* 442 Mass. 1002, 809 N.E.2d 536, 537–38 (2004). · However, that evidence was admissible once Holloman took the stand and testified in his own defense. Such evidence is admissible to impeach a defendant's credibility, as well as for some other limited purposes. *See, e.g., State v. Martinez,* 621 N.W.2d 689, 695–96 (Iowa App.2000); *State v. Elmore,* 139 Wash.2d 250, 985 P.2d 289, 310 (1999); *State v. Johnson,* 90 Wash.App. 54, 950 P.2d 981, 990 (Div. 2 1998); and *State v. Bergeron,* 162 Wis.2d 521, 470 N.W.2d 322, 324–26 (App.1991). Thus, the fact that Holloman did use an alias, indeed the record indicates he used two of them, was properly called to the attention of the jury in order to test his credibility. Given that circumstance, as well as the overwhelming evidence of Holloman's guilt in the death of Johnson, we conclude that the evidence did not affect a substantial right belonging to Holloman, and we consider any error in this respect harmless. W.R.A.P. 9.04.

[¶ 22] Second, Holloman contends that the testimony of two witnesses who had contact with him the day before the crime constituted W.R.E. 404(b) evidence that was admitted without compliance with the standards we have placed in force. Cheyenne Police Officer Debra Stowe was called to the scene of a downtown convenience store after Holloman called for medical assistance when his face was slashed on July 24, 1999. She testified that Holloman used an alias, was "angry," "combative," "changed his story" several times about the incident that occurred that day, and interpreted a comment he made about the incident to mean that he wanted to "take care" of the individual himself if "he ever saw that individual again." Of course, the record is clear that Johnson had nothing to do with the July 24, 1999, attack on Holloman. The defense objected to some of this testimony, but the objections were not ruled on definitively, nor did the defense ask for a limiting instruction or other remedial action at the time.

[¶ 23] Colleen Capson, an employee of the Cheyenne Radiology Group, was called to testify about her contact with Holloman on July 24, 1999, when he appeared at her place of employment for an x-ray. She characterized Holloman as "solemn," "concentrating," and "a little mad." In response to a question to him about the person who had injured him so severely, she related that Holloman said "he was going to take care of it." After that she did not speak with Holloman further because of her subjective sense that he gave her the "creeps." The defense lodged no objections to this testimony.

[¶ 24] At best, it is quite difficult to pinpoint the competence or relevance of much of the above-described testimony. As suggested by Holloman, it does appear to be directed solely at a tendency on his part to be angry and violent, and having a desire for vigilante justice against whoever might cross his path. In contrast, other witnesses who saw Holloman on July 24, 1999, characterized him as intoxicated and confused, but not hostile, and "pleasant" and "cooperative."

[¶ 25] Our analysis of this asserted W.R.E. 404(b) testimony suggests that none of it was admissible. The State provided the court with no explanation about how Mr. Holloman's reaction to the events of July 24 were relevant to the issues at trial. Instead, the State blatantly used character evidence to prove conduct, and did so without coming close to justifying it under the Wyoming Rules of Evidence and the dictates of *Williams,* ¶¶ 8–14; *Gleason v. State,* 2002

WY 161, ¶¶ 16–18, 26–30, 57 P.3d 332, ¶¶ 16–18, 26–30 (Wyo.2002), and the long line of cases cited therein. We clearly stated the following rule in *Gleason*, at ¶ 30:

> In future cases involving the admissibility of evidence under W.R.E. 404(b), the record shall reflect the trial court's identification of the purpose or purposes for admission of the evidence, the findings and conclusions establishing relevance and probative value, and the factors considered in balancing probative value against the potential for unfair prejudice. The "shotgun approach" of listing every conceivable purpose for admissibility, followed by a bald statement that probative value outweighs prejudicial effect will no longer be sufficient. While the trial court need not make an express finding on every factor from *Dean* [*v. State*, 865 P.2d 601 (Wyo.1993)] and *Rigler* [*v. State*, 941 P.2d 734 (Wyo. 1997)], the record must contain sufficient findings to support the trial court's conclusions. The burden, of course, will be upon the proponent of the evidence to supply the foundation for its admission.

[¶ 26] What did the evidence of the previous day's events prove, other than Holloman's character? Where is the showing that this evidence was more probative on a point at issue, than it was unfairly prejudicial? In effect, the jury was told that Holloman was a vengeful thug. However, other properly admitted evidence, particularly the fact that Mr. Holloman held the struggling victim out of the window for an extended period of time before dropping him to his death, supported the jury's finding of first-degree murder. Under the circumstances present here, we find the error of admitting improper 404(b) evidence to be harmless. W.R.A.P. 904.

## CONCLUSION

[¶ 27] We conclude that any errors in the admission or exclusion of evidence in this case were harmless. The judgment and sentence of the district court are affirmed.