**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 18, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRIAN HOLLOMAN,

　　　　　Petitioner-Appellant,

　　v.

ED GONZALES, Bill Clayton
Detention Center Warden, R.O.
LAMPERT, Director, Wyoming
Department of Corrections, and
PATRICK CRANK, Attorney General,
State of Wyoming,

　　　　　Respondents-Appellees.

No. 07-8019

(D. of Wyo.)

(D.C. No. 06-CV-154-ABJ)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **HENRY**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[**]

---

　　Brian Holloman, a state prisoner, seeks a certificate of appealability (COA)

to challenge the district court's denial of his petition for a writ of habeas corpus

under 28 U.S.C. § 2254.  Holloman argues the state trial court violated his due

---

　　[*] This order is not binding precedent except under the doctrines of law of
the case, res judicata and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

　　[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G).  The cause is therefore ordered submitted without oral argument.

process rights in two ways: (1) by refusing to admit evidence of his victim's and a witness's criminal histories; and (2) by allowing the state to present inadmissible character evidence about him. Because Holloman has made no substantial showing of the denial of a constitutional right, we deny the COA and dismiss the appeal.

## I. Background

Holloman was convicted in Wyoming state court of first degree murder and sentenced to life in prison. The charges arose from events of July 25, 1999 in Cheyenne. Holloman arrived in Cheyenne by freight train on July 24 and spent the day drinking. During an altercation that night, Holloman was injured when another man cut his face with a broken beer bottle. Holloman was treated at a hospital, receiving two layers of stitches, and spent the night in a detoxification facility. When he was released the next morning, he went to a liquor store where he met Doug Johnson, the victim, and Herman Thunder Hawk, a witness to Johnson's death. Neither Thunder Hawk nor Johnson had been involved in the fight the previous night.

Thunder Hawk, Johnson, and Holloman bought beer and vodka and went to Thunder Hawk's apartment in room 302 of the Idelman Hotel in downtown Cheyenne. The three drank all day, going out to buy more vodka around 2:00 p.m. At some point, they all passed out. Thunder Hawk testified that he woke up later that evening and spent about fifteen minutes in the bathroom,

during which time he did not hear any commotion in the other room. When he came out, he saw Johnson hanging out the window and Holloman holding him by the legs and preventing him from climbing back into the room. It was around 7:00 p.m. and the street was busy with people attending Cheyenne Frontier Days. Numerous witnesses testified at trial identifying Holloman as the man holding Johnson out the window. After about five minutes, Holloman let go and Johnson fell to his death. When the police arrived and apprehended Holloman and Thunder Hawk, Holloman made a number of statements indicating he meant to kill Johnson. At the time, Holloman's blood alcohol content was .33. Thunder Hawk's was .27, and Johnson's was .36.

At trial, Holloman argued to the jury that Johnson's death was a combination of self-defense and accident. He testified that he awoke to loud music and got up to turn it off. As he bent over, someone hit him in the face where his wound had been stitched up the previous night. He was blinded and disoriented by the pain, and when he was able to refocus, he saw Thunder Hawk, assumed he was the attacker, and fought to defend himself. He did not see Johnson and argues he must have accidentally knocked Johnson out the window in the scuffle. The jury rejected Holloman's version of events and convicted him of murder.[1]

---

[1] This was the second guilty verdict for Holloman arising out of Johnson's murder. Holloman was also convicted at his first trial, but the Wyoming Supreme

(continued...)

Prior to trial, the court had granted the state's motion in limine to exclude criminal history evidence concerning Johnson and Thunder Hawk. Holloman argued the evidence was relevant and admissible under Wyoming Rules of Evidence (WRE) 404(a)[2] to support his theory that Thunder Hawk or Johnson attacked him. He also argued Thunder Hawk's record was admissible to impeach Thunder Hawk's credibility as a witness under WRE 609.[3]

---

[1](...continued)
Court reversed the conviction because the trial court had not instructed the jury on the elements of self-defense.

[2] WRE 404(a) provides:
(a) Character evidence generally. — Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of Accused. — Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
(2) Character of Victim. — Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
(3) Character of Witness. — Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

[3] WRE 609 provides in pertinent part:
(a) General rule. — For the purpose of attacking the credibility of a witness, evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one (1) year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

(continued...)

-4-

At trial, Holloman objected to the state's use of prior acts evidence against him. During opening statements, the prosecutor suggested the jury would hear evidence that Holloman had attacked another man earlier on the day of the murder. This evidence had been excluded in the first trial, and while the court initially overruled the defense objection during opening statements, it later excluded the actual evidence. Two witnesses also testified at trial about Holloman's statements and demeanor on July 24, the day prior to the murder when he was attacked by someone other than Thunder Hawk and Johnson. The gist of the testimony was that Holloman had a belligerent attitude, kept changing his story, used an alias, made one witness uncomfortable, and meant to get even with whoever had cut him. During closing argument, over repeated sustained objections, the prosecutor argued that the events of July 24 gave the jury "an idea as to the person of Brian Holloman." Aplt. App. 288. Holloman argued all of

---

[3](...continued)

(b) Time limit. — Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten (10) years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

this evidence was inadmissible evidence of other crimes, wrongs, or acts under

WRE 404(b).[4]

## II. Procedural History

The Wyoming Supreme Court affirmed the conviction as a matter of Wyoming evidence law. Holloman's petition for rehearing was denied on March 22, 2005. On June 19, 2006, Holloman filed a petition for a writ of habeas corpus in the United States Court for the District of Wyoming, pursuant to 28 U.S.C. § 2254. The district court denied the petition because the Wyoming Supreme Court fairly applied Wyoming evidence law and any error did not amount to a denial of due process. The district court also found Holloman failed to exhaust his claim regarding the state's introduction of inadmissible character evidence against him because his arguments before the state court did not raise a constitutional argument but instead focused on Wyoming evidentiary rules. The district court denied a COA.

## III. Discussion

To appeal the district court's denial of his § 2254 petition, Holloman must obtain a COA by making "a substantial showing of the denial of a constitutional

---

[4] WRE 404(b) provides:
(b) Other crimes, wrongs, or acts. — Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

right." 28 U.S.C. § 2253(c)(2). He may make this showing by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). Furthermore, Holloman must make a substantial showing that the state court decision "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254. Because we find Holloman has not made a substantial showing that the state trial violated his due process rights, we deny COA and dismiss the appeal.

## A. Johnson's and Thunder Hawk's Criminal Records

When reviewing a state court's evidentiary rulings, any error, to warrant habeas relief, must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000). Holloman argues the exclusion of Johnson's and Thunder Hawk's criminal records violated his constitutional right to present a defense because the evidence would have bolstered his claim that either Johnson or Thunder Hawk was the first aggressor and that Johnson's death accidentally resulted from his justified efforts to defend himself.

Holloman sought to introduce the following acts by Johnson:

-7-

1. 4th Degree Assault, 4/3/96 in Oregon, disposition unknown.
2. Carrying a Concealed Weapon, 6/18/80 in Oregon, convicted.
3. Aggravated Battery, 4/13/89, in New Mexico, convicted.
4. Robbery (while armed with a deadly weapon), 4/13/89, in New Mexico, convicted.
5. Obstructing a Peace Officer, 12/13/96, in Montana, convicted.
6. Robbery, 12/15/91, in California, disposition unknown.
7. Use Drugs to Injure or Facilitate Crime, 8/17/85, in Minnesota, disposition unknown.
8. Aggravated Robbery, 8/17/85, in Minnesota, dismissed.
9. 2nd and 3rd Degree Assault, 5/21/87, in Minnesota, dismissed.
10. Fighting, 3/10/83, in California, disposition unknown.
11. Robbery, 12/15/91, California, disposition unknown.
12. Johnson's membership in the Freight Train Riders of America, a gang known for its violent conduct.

Aplt. App. 263. He also sought to introduce the following acts by Thunder Hawk:

1. Robbery, assault and failure to appear convictions on 11/17/75.
2. Fraudulent use of a credit card conviction on 3/23/78.
3. Third Degree Sexual Assault conviction on 6/11/90.
4. Providing False Information on 3/21/93.

Aplt. App. 265. We do not think Holloman has made a substantial showing that the exclusion of this evidence was so fundamentally unfair as to deny him due process.

The trial court initially excluded evidence of Johnson's distant criminal past because it was so remote that its probative value was outweighed by the danger of unfair prejudice. The court excluded evidence of Johnson's membership in a group with a reputation for violence as irrelevant to Johnson's personal reputation. The court similarly excluded three of Thunder Hawk's convictions as too remote, noting that even though WRE 609 provides additional

grounds for admitting prior crimes evidence to attack the credibility of a witness, the rule also provides a time limit of ten years.[5] The Wyoming Supreme Court affirmed on the ground that Holloman's offer of proof as to the prior convictions was inadequate. Specifically, the supreme court held the trial court did not abuse its discretion by excluding the evidence in limine because Holloman offered inadequately developed evidence and the trial court did not foreclose Holloman's opportunity to raise the evidence again if it became appropriate. While Holloman argued on direct appeal that the trial court did not reject the evidence for lack of foundation, the supreme court noted it could "uphold the general ruling of the court below if supported by any reasonable view of the evidence." Aplt. App. 187 n.4 (citing *Wyoming v. Williams*, 90 P.3d 85, ¶ 12 (Wyo. 2004)).

Considering Holloman's federal habeas petition, the federal district court acknowledged that "state evidentiary determinations ordinarily do not present federal constitutional issues unless the state court applies a state evidentiary rule unfairly to prevent a defendant from presenting evidence that is critical to his

---

[5] The trial court tentatively admitted Thunder Hawk's 1993 false information conviction, subject to adequate proof at trial. Holloman never presented this evidence at trial, nor did the defense re-raise any of its criminal history evidence, despite the court's invitation to do so if the evidence developed in such a way that might alter the court's analysis. As the Wyoming Supreme Court noted, Holloman may have had a good tactical reason for not pursuing the criminal history evidence further. Prior to trial, the court had also excluded evidence of a prior manslaughter conviction on Holloman's part. The court discussed the possibility that admitting evidence of Johnson's and Thunder Hawk's prior bad acts would open the door for admission of similar evidence against Holloman.

defense." Aplt. App. 381 (quoting *Romano v. Gibson*, 239 F.3d 1156, 1166 (10th Cir. 2001)). The district court determined the state court's application of its own evidence law was reasonable. Furthermore, the district court decided the state court had not unfairly prevented Holloman from presenting evidence critical to his defense because the suppression of the evidence did not affect the outcome. *See Ellis v. Mullin*, 326 F.3d 1122, 1128 (10th Cir. 2002).

We agree Holloman has made no substantial showing that the exclusion of the evidence cited deprived him of a constitutional right to present a defense. Holloman argued his self-defense/accident theory to the jury, supported by his testimony and evidence showing his bruised face. Nevertheless, as the jury apparently found, the weight of the other evidence makes Holloman's theory implausible, even if we consider the criminal backgrounds of Johnson and Thunder Hawk. The evidence the state presented thoroughly rebutted Holloman's self-defense theory, particularly by establishing through eyewitnesses that Holloman held Johnson out the window for a number of minutes before Johnson fell to his death. Accordingly, because the decision of the Wyoming courts was not an unreasonable application of the Supreme Court's due process precedent, Holloman has made no substantial showing of the denial of a constitutional right with regard to exclusion of evidence.

## B. Character Evidence About Holloman

Holloman argues his constitutional rights were violated when the prosecutor introduced and argued irrelevant evidence about his conduct on the day preceding Johnson's death. The Wyoming Supreme Court determined the evidence was inadmissible because it had no relevance other than to show Holloman was a "vengeful thug." Aplt. App. 191–92. The supreme court nevertheless determined the error was harmless, given the weight of the evidence against Holloman. On Holloman's subsequent habeas petition, the federal district court decided Holloman had failed to exhaust his constitutional argument in the state court by insufficiently developing it on direct appeal. The district court nevertheless went on to conclude that, even if Holloman had not waived his claim, admission of such evidence did not deprive Holloman of due process.

We disagree with the district court that Holloman failed to exhaust his constitutional claims in state court with regard to the state's misuse of evidence. Holloman specifically referred to his claim below as a violation of his due process right to a fair trial. Furthermore, Holloman fully explained the factual allegations supporting his claim for the state court to consider.

On the other hand, we agree with the district court that any error did not amount to a denial of due process. Holloman's claim includes allegations that the prosecutor knowingly argued inadmissible evidence to the jury and that the trial court improperly admitted such evidence. Both arguments require us to determine

whether the error so fatally infected the trial with unfairness as to violate due process. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643–45 (1974) (applying standard to allegation of prosecutorial misconduct); *Fox*, 200 F.3d at 1296 (applying standard to state evidentiary ruling). A showing of fundamental unfairness in turn requires Holloman to show any error "had a substantial and injurious effect or influence in determining the verdict." *Patton v. Mullin*, 425 F.3d 788, 800 (10th Cir. 2005). Holloman has not made such a showing.

Both the state supreme court and the federal district court determined that, although the challenged evidence and arguments were irrelevant, any error did not influence the verdict because of the overwhelming evidence against Holloman. Holloman has not presented any argument on appeal to convince us to the contrary. As the state and lower court held, the jury would have convicted Holloman even without the challenged testimony. The jury did not need to rely on an inference of violent character based on Holloman's July 24 behavior to believe the numerous eyewitness accounts that Holloman deliberately dropped Johnson from a window on July 25.

In sum, Holloman has made no substantial showing that the decision of the Wyoming courts was contrary to clearly established federal law.

### IV. Conclusion

Because Holloman has not made a substantial showing of the denial of a

constitutional right, we decline to issue a COA and dismiss the appeal.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge